**AFFIRM; and Opinion Filed November 7, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01116-CR

**CYNTHIA LORRAINE WHITAKER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 2**
**Collin County, Texas**
**Trial Court Cause No. 002-80229-2012**

## OPINION
Before Justices Bridges, Fillmore, and Lewis
Opinion by Justice Fillmore

On October 23, 2011, Cynthia Lorraine Whitaker was involved in a motor vehicle accident and was arrested for driving while intoxicated (DWI). One of the other persons involved in the accident was taken to the hospital. Because of the circumstances associated with the accident and Whitaker's refusing consent to the taking of a specimen of breath and/or blood to determine her alcohol concentration, the police, without obtaining a warrant, required the involuntary taking of a specimen of Whitaker's blood.

Whitaker waived her right to a jury, and trial was conducted to the court. During trial, Whitaker moved to suppress the results of the blood alcohol analysis performed on the sample of her blood taken after her arrest. The trial court denied Whitaker's motion to suppress, found her guilty of DWI, and assessed punishment of four days in jail and a $1,000 fine. In one issue,

Whitaker asserts the trial court erred by denying the motion to suppress.  We affirm the trial court's judgment.

## Background

At approximately 12:30 a.m. on October 23, 2011, Lauren Richards stopped her car in a line of vehicles at a traffic light on the service road adjacent to Highway 121.  The traffic light was red, and there were two vehicles stopped at the light in front of Richards.  When the light turned green, the front car began to move.  However, before the driver of the pickup truck in front of Richards took his foot off the brake, Richards's car was struck from behind and pushed into the truck in front of her.  The doors to Richards's car would not open, and Whitaker, the driver of the car that hit Richards's car, came to talk to Richards three times.  According to Richards, Whitaker seemed to stumble a little bit and leaned on the car when she walked.

Jonathan Miles, a certified paramedic and firefighter, saw three vehicles with their hazard lights flashing stopped on the service road adjacent to Highway 121.  Miles decided to stop and render aid, if necessary.  Miles talked first to Whitaker, who was leaning against the last car. The car had heavy front-end damage, but no rear damage.  Whitaker told Miles that she was fine. Miles noticed a very faint odor of alcohol emanating from Whitaker and that Whitaker was balancing herself against the car.

Richards told Miles that she was "shook up," but fine.  Miles then checked on the driver of the pickup truck.  There were dents in the back of the pickup truck.  Ernesto Flores was still in the driver's seat of the truck and spoke only Spanish.  Miles knows a few terms from his medical training that allow him to speak briefly with Spanish-speaking patients.  In Spanish, he asked Flores if he had any pain.  Flores responded "yes," and pointed to the back of his neck and to both his upper and lower back.  Miles did not observe that Richards or Flores had any life

threatening or serious injuries. Miles called 911 and relayed that there were injured parties and he needed "fire/EMS."

Police officer Jerry Profeta was one of the officers who responded to the call concerning a major vehicle accident. Within the department, "major vehicle accident" means a traffic collision that includes injury. Profeta was told there were three cars involved in the accident, the man in the truck was complaining about back, neck, leg, and head injury, and the driver of the middle car said she was hurt, but did not need medical assistance.

When Profeta arrived at the accident, he saw three cars. The car in the back had heavy front-end damage, the middle car had heavy rear-end damage as well as front-end damage, and the truck in the front had rear-end damage. Miles approached Profeta as he got out of his patrol car. According to Profeta, Miles said that he had talked to the occupants of the cars and he did not see any serious injuries. Miles told Profeta that Flores spoke only Spanish and was complaining of injury. Miles also told Profeta that he thought Whitaker was intoxicated.

Profeta spoke with Richards and Whitaker and determined that Whitaker's car had rear-ended Richards's car and pushed the car into the pickup truck. Profeta noticed that Whitaker was unsteady on her feet and had a strong odor of alcohol on her breath, bloodshot eyes, and slow and slurred speech. In response to Profeta's questions, Whitaker admitted she was coming from a bar and had been drinking. Because he had seen a number of indications that Whitaker was intoxicated, Profeta asked her several times to perform standardized field sobriety tests. Whitaker refused to do so, and Profeta arrested Whitaker for DWI.

While Profeta was talking to Whitaker, a medic told him that Flores was going to be transported to the hospital for injuries sustained in the accident. Although Flores was not transported prior to Whitaker's arrest, Profeta believed Flores was injured in the accident based on the information he received from dispatch while he was on his way to the accident, a medic

telling him that Flores was complaining of some sort of injury, a medic telling him they were transporting Flores to the hospital, and because "the medics that arrived on the scene had put him on a stretcher, loaded him in the back of the ambulance, and they were transporting him to the hospital." Profeta admitted he did not speak to Flores and that he did not write in his report that Miles said Flores was complaining of pain. Profeta also admitted it was possible Flores was taken to the hospital as a precautionary measure because he could not communicate with the emergency personnel trying to evaluate him.

Profeta took Whitaker to the Frisco police department and read her the statutory warnings regarding providing a breath or blood sample. Whitaker refused to provide a sample and refused to sign the form containing the warnings.[1] Profeta then took Whitaker to the hospital where a sample of her blood was taken.[2] Although Flores was still at the hospital, Profeta did not speak to the nurses about Flores's condition.

At trial, Whitaker moved to suppress the results of the alcohol analysis performed on her blood on the ground the blood sample was taken without her consent, a warrant, or any legal authority. Whitaker argued there was no evidence Flores was injured in the accident. Whitaker asserted Profeta did not speak to Flores and did not observe anything that would lead him to believe Flores was injured. Whitaker also contended that Profeta did not include in his report that Miles said he could speak Spanish; rather, the report indicates Miles told Profeta that no one had serious injuries. Whitaker argued Profeta's testimony that he believed Flores was injured was conclusory because there was no evidence Profeta knew what type of injuries Flores

---

[1] Form DIC–24, contained in the record, is the written component of the statutory warning required in cases where a peace officer requests a voluntary blood or breath specimen from a person. *See* TEX. TRANSP. CODE ANN. § 724.015 (West Supp. 2013); *Linton v. State*, 275 S.W.3d 493, 495 n.3 (Tex. Crim. App. 2009).

[2] Form THP–51, also contained in the record, is the statutory authorization form that allows a peace officer to require that a hospital perform a mandatory blood drawing. *See* TEX. TRANSP. CODE ANN. § 724.012(b) (West 2011); *State v. Neesley*, 239 S.W.3d 780, 782 n.2 (Tex. Crim. App. 2007).

–4–

suffered and Profeta did not ask Flores, the emergency personnel, or the nurses at the hospital about Flores's condition.

The trial court denied the motion to suppress and admitted the results of the analysis of the blood sample, which showed a blood alcohol content of 0.2. The trial court found Whitaker guilty of DWI and assessed punishment at four days in jail and a fine of $1,000.

## Motion to Suppress

In one issue, Whitaker asserts the trial court erred by admitting the results of the blood alcohol analysis because, at the time of Whitaker's arrest, (1) Profeta did not have sufficient information to form a reasonable belief that the driver of the pickup truck suffered bodily injury, and (2) Flores had not been transported to a hospital or medical facility for treatment.

### *Standard of Review*

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of the law to the facts de novo. *Id.* We give almost total deference to the trial court's determination of historical facts, particularly when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Id.*; *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We give the same deference to the trial court's conclusions with respect to mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012) (citing *Guzman v. State*, 955 S.W.2d 85, 87–89 (Tex. Crim. App. 1997)). We review mixed questions of law and fact that do not depend on credibility and demeanor as well as purely legal questions de novo. *State v. Woodward*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011); *Guzman*, 955 S.W.2d at 89.

–5–

As a general rule, we view the evidence in the light most favorable to the trial court's ruling and afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Turrubiate*, 399 S.W.3d at 150.

*Analysis*

Chapter 724 of the transportation code provides that a person who operates a motor vehicle in a public place while intoxicated is considered to have consented to submit to the taking of a breath or blood specimen for analysis to determine the alcohol concentration or the presence of a controlled substance, drug, dangerous drug, or other substance in the person's body. TEX. TRANSP. CODE ANN. § 724.011(a) (West 2011); *see also Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002) (recognizing that implied consent law "gives officers an additional weapon in their investigative arsenal, enabling them to draw blood in certain limited circumstances even without a search warrant). If a person arrested for a specified offense refuses the officer's request to submit to the taking of a specimen, section 724.012(b) requires the involuntary taking of a blood specimen under certain circumstances. In relevant part, the statute provides:

> (b) A peace officer shall require the taking of a specimen of the person's breath or blood under any of the following circumstances if the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle or a watercraft and the person refuses the officer's request to submit to the taking of a specimen voluntarily:
>
>> (1) The person was the operator of a motor vehicle or a watercraft involved in an accident that the officer reasonably believes occurred as a result of the offense and, at the time of the arrest, the officer reasonably believes that as a direct result of the accident:
>>
>> (A) any individual has died or will die;

–6–

(B) an individual other than the person has suffered serious bodily injury; or

(C) an individual other than the person has suffered bodily injury and been transported to a hospital or other medical facility for medical treatment.

TEX. TRANSP. CODE ANN. § 724.012(b) (West 2011). Whitaker argued to the trial court that the seizure of her blood without a warrant violated the requirements of section 742.012(b) of the transportation code because Profeta did not have a reasonable belief that Flores suffered bodily injury. On appeal, Whitaker contends the State did not establish the applicability of section 724.012(b)(1)(C) because it did not prove that, at the time of Whitaker's arrest, Profeta had a reasonable belief that Flores had suffered bodily injury and been transported to a hospital or other medical facility for medical treatment.[3]

We first note Whitaker did not argue in the trial court that the results of the testing on the sample of her blood should be suppressed because Flores had not been transported to the hospital at the time of Whitaker's arrest. Accordingly, Whitaker has failed to preserve this argument for our review. *See* TEX. R. APP. P. 33.1(a); *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005) (defendant waived arguments on appeal by failing to raise them in motion to suppress in trial court); *Hailey v. State*, 87 S.W.3d 118, 121–22 (Tex. Crim. App. 2002) (court of appeals may not reverse trial court's ruling on motion to suppress based on legal theory not presented to trial court).

---

[3] In addition to addressing Whitaker's arguments in her brief regarding whether the requirements of section 724.012 were met, the State argues in its brief that the evidence resulting from the taking of the blood sample should not be suppressed under the United States Supreme Court's decision in *Missouri v. McNeely*, 133 S. Ct. 1552 (2013). In *McNeely*, the supreme court held that "in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *Id,* at 1568. Rather, whether exigent circumstances exist must be determined on a case by case basis. *Id.* at 1559, 1561. Whitaker had complained only about whether the statutory requirements of section 724.012 of the transportation code were met. She did not argue in the trial court, and does not argue on appeal, that section 724.012 violates her rights under the Fourth Amendment to the United States Constitution. Accordingly, we conclude this issue is not before us and do not address the impact, in any, of the supreme court's opinion in *McNeely* on section 724.012 of the transportation code. *See* TEX. R. APP. P. 33.1(a); *Wilson v. State*, 311 S.W.3d 452, 463 (Tex. Crim. App. 2010) (claim concerning violation of due process clause of federal constitution is entirely different claim, assessed under legally distinct standards, from one concerning violation of state statute); *Buchanan v. State*, 207 S.W.3d 772, 777–78 (Tex. Crim. App. 2006) (defendant failed to preserve for review statutory grounds for exclusion of evidence obtained from warrantless arrest when he relied solely on federal constitutional arguments).

As to Whitaker's contention that, at the time of her arrest, Profeta did not have a reasonable belief that Flores had suffered bodily injury in the accident, an officer's reasonable belief for purposes of section 724.012 of the transportation code must be based upon specific and articulable facts. *Badgett v. State*, 42 S.W.3d 136, 139 (Tex. Crim. App. 2001) (addressing officer's reasonable belief that accident was caused by the offense). An articulable belief "can result from any number of factors" including witness interviews and conclusions drawn from experience in combination with observation of the accident scene. *Id.* "Bodily injury" for the purposes of section 724.012(b)(1)(C) means "physical pain, illness, or any impairment of physical condition." TEX. TRANSP. CODE ANN. § 724.012(d); TEX. PENAL CODE ANN. § 1.07(a)(8) (West Supp. 2013).

Profeta did not speak to Flores at the scene of the accident. However, when Profeta was dispatched to the accident, he was informed it was a "major vehicle accident." Within the police department, the phrase "major vehicle accident" is used to describe an accident involving injuries. The call notes sent to Profeta by dispatch showed that Flores was complaining of "head/neck/back and leg pain." When Profeta arrived at the scene, Miles, an off-duty paramedic, told Profeta that he did not see any serious injuries, but Flores was complaining of pain or injury. While Profeta was speaking with Whitaker, a medic told Profeta that Flores would be transported to the hospital. Profeta testified he believed Flores suffered bodily injury based on the information he received from dispatch while he was on his way to the accident, a medic telling him that Flores was complaining of some sort of injury, and the medics putting Flores on a stretcher and placing him in the ambulance in preparation for transportation to the hospital.

We conclude Profeta testified to specific, articulable facts that supported his reasonable belief at the time of Whitaker's arrest that Flores suffered bodily injury in the accident.

Accordingly, the trial court did not err by denying Whitaker's motion to suppress the results of the analysis of her blood sample.[4] We resolve Whitaker's sole issue against her.

We affirm the trial court's judgment.


/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE


Do Not Publish
TEX. R. APP. P. 47

121116F.U05

---

[4] *See Glaser v. State*, No. 05-11-00119-CR, 2012 WL 1034923, at *2 (Tex. App.—Dallas Mar. 29, 2012, no pet.) (not designated for publication) (deferring to trial court's resolution of conflicting evidence regarding whether officer reasonably believed person had suffered bodily injury and been transported to hospital or other medical facility for treatment).



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CYNTHIA LORRAINE WHITAKER,
Appellant

No. 05-12-01116-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
No. 2, Collin County, Texas,
Trial Court Cause No. 002-80229-2012.
Opinion delivered by Justice Fillmore,
Justices Bridges and Lewis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 7th day of November, 2013.

/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE