ACCEPTED
01-14-00575-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
2/11/2015 11:18:33 PM
CHRISTOPHER PRINE
CLERK

**No. 01-14-00575-CR**

In the Court of Appeals for the
First District of Texas at Houston

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

2/11/2015 11:18:33 PM

CHRISTOPHER A. PRINE
Clerk

◆

**No. 1909929**

In the County Criminal Court at Law No. 13, Harris County, Texas

◆

**VIBHA HARISH PATEL,**
*Appellant*

v.

**THE STATE OF TEXAS**
*Appellee*

◆

**APPELLANT'S BRIEF ON DIRECT APPEAL**

◆

PEYTON Z. PEEBLES, III

CAPITAINE, SHELLIST, PEEBLES
& MCALISTER, LLP
405 Main Street, Suite 200
Houston, Texas 77002
Tel.:     (713) 715-4500
Fax:     (713) 715-4505
Email:  peebles@texaslegalteam.net
SBOT:  24013307

*Attorney for Appellant,*
*Vibha Harish Patel*

**ORAL ARGUMENT REQUESTED**

1

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to TEX. R. APP. P. 38.2(a)(1)(A), a complete list of the names of all interested parties is provided below:

**Counsel for Appellant:**

Peyton Z. Peebles, III — Appeal
Capitaine, Shellist, Peebles
& McAlister, LLP
405 Main Street, Suite 200
Houston, TX 77002

Alexander Defrietas — Trial
2800 Post Oak Blvd. #4100
Houston, TX 77056

Steven D. Shellist — Trial
Capitaine, Shellist, Peebles
& McAlister, LLP
405 Main Street, Suite 200
Houston, TX 77002

**Appellant (Criminal Defendant):**

Vibha Harish Patel

**Counsel for the State:**

Devon Anderson — District Attorney
Alan Curry — Assistant District Attorney
Kristena A. Glenn — Assistant District Attorney
Kyle J. Watkins — Assistant District Attorney

Harris County, Texas
1201 Franklin Street, Ste. 600
Houston, Texas 77002

**Trial Judge:**

Hon. Don Smyth —— Presiding Judge
Harris County Criminal Court
at Law No. 13
Harris County, Texas
Criminal Justice Center
1201 Franklin, 11th Floor
Houston, Texas 77002

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to TEX. R. APP. P. 9.4(g) and TEX. R. APP. P. 39.1, appellant requests oral argument because the case presents important issues that will affect future cases.

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL .................................... i

STATEMENT REGARDING ORAL ARGUMENT ....................... iii

INDEX OF AUTHORITIES ...........................................v

STATEMENT OF THE CASE ......................................1

STATEMENT OF FACTS ........................................2

SUMMARY OF THE ARGUMENT ................................7

ARGUMENT ...................................................7

POINT OF ERROR— THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING APPELLANT'S BREATH TEST RESULT (STATE'S EXHIBIT 7) OVER HER OBJECTION. ...............................7

    A.   STANDARD OF REVIEW ...................................7

    B.   APPLICABLE LEGAL PRINCIPALS .......................... 9

    C.   ARGUMENT—ERROR .....................................10

    D.   ARGUMENT—HARM ..................................... 13

PRAYER .....................................................15

CERTIFICATE OF COMPLIANCE ............................... 16

CERTIFICATE OF SERVICE .................................... 17

# INDEX OF AUTHORITIES

**CASES**

*Atkinson v. State*,
   923 S.W.2d 21 (Tex. Crim. App. 1996).................................... 9

*Carmouche v. State*,
   10 S.W.3d 323 (Tex. Crim. App. 2000)................................... 8

*Dixon v. State*,
   206 S.W.3d 587 (Tex. Crim. App. 2006).......................... 8, 11

*Morales v. State*,
   32 S.W.3d 862 (Tex. Crim. App. 2000) ................................14

*Motilla v. State*,
   78 S.W.3d 352 (Tex. Crim. App. 2002) ............................ 9, 14

*State v. Duran*,
   396 S.W.3d 563 (Tex. Crim. App. 2013) .......................... 9, 11

*State v. Story*,
   445 S.W.3d 729 (Tex. Crim. App. 2014)..............................8, 9

*Turrubiate v. State*,
   399 S.W.3d 147 (Tex. Crim. App. 2013)........................8, 9, 11

*Valtierra v. State*,
   310 S.W.3d 442 (Tex. Crim. App. 2010) ............................... 8

*Worku v. State*,
   No. 14-13-00047-CR, 2014 WL 1330278 (Tex. App.—
   Houston (14th Dist.) April 3, 2014, no pet.) ..........................12

**STATUTES**

37 TEX. ADMIN. CODE § 19.4(c) (2014) ..........................................10

37 TEX. ADMIN. CODE § 19.4(c)(1) (2014) .................................9, 10

TEX. CODE CRIM. P. ANN. art. 38.23 (Vernon 2005) ......................7

TEX. PENAL CODE ANN. § 49.04 (Vernon 2011) ............................1

TEX. TRANS. CODE ANN. § 724.016 (Vernon 2011) ........................ 9

**RULES**

TEX. R. APP. P. 38.2(a)(1)(A) ......................................................... i

TEX. R. APP. P. 39.1 .................................................................... iii

TEX. R. APP. P. 44.2(b) ............................................................... 13

TEX. R. APP. P. 9.4(g) ................................................................. iii

**TO THE HONORABLE COURT OF APPEALS:**

**STATEMENT OF THE CASE**

The State charged appellant by information with driving while intoxicated in violation of TEX. PENAL CODE ANN. § 49.04(a) and (d) (Vernon 2011) (CR at 14).[1] Appellant pled not guilty, but a jury returned a guilty verdict (CR at 72-74; RR3 at 10). The judge then assessed her punishment at confinement for 5 days in the Harris County Jail (CR at 73-74).

Appellant properly noticed her intent to appeal and the trial court certified her right to do so (CR at 76-78). This appeal follows.

---

[1] The record is cited as follows:

| | |
|---|---|
| CR | Clerk's record |
| RR# | Reporter's record (with # corresponding to the volume number). |

CR      Clerk's record

RR#      Reporter's record (with # corresponding to the volume number).

[2] Sampson incorrectly testified that the walk and turn test had a total of 6

1

## STATEMENT OF FACTS

In July, 2013, Tomball Police Department Officer Johnny Sampson answered a distress call regarding a car stranded in a ditch (RR3 at 17-22). He arrived between 3:30 and 4:00 a.m. and found appellant inside the vehicle (RR3 at 22-23). The vehicle was running and its brake lights were on, suggesting that appellant's foot was pressing the brake pedal (RR3 at 22-23).

Appellant was upset and said her GPS had misdirected her to turn and she followed its directions, thinking she was turning into her driveway despite being miles from her house (RR3 at 28-31, 45, 67). Sampson smelled alcohol; appellant said she had consumed about two beers between 11:00 p.m. and 12:00 a.m. (RR3 at 29, 54-55). Sampson also noted that appellant's eyes were red, bloodshot, and glassy and that her speech seemed slurred (RR3 at 45). Appellant performed field sobriety tests wearing no shoes because her feet were blistered and hurting (RR3 at 45, 62-63). She displayed 6 of 6 clues on

the HGN test, 4 of 6 clues[2] on the walk and turn test, and 3 of 4 clues on the one-leg-stand test (RR3 at 41-46, 53). Sampson believed these clues indicated intoxication (RR3 at 41-46, 53). He arrested appellant at around 4:20 a.m. (RR3 at 84).

Corporal Brandon Patin was supervising the Tomball patrol officers and arrived at Sampson's scene (RR3 at 88-92). He did a secondary HGN test on appellant and thought that appellant smelled of alcohol and suffered slurred speech, although he noted that she had no problem getting out of her car or navigating the ditch in bare feet (RR3 at 107-10). Patin left to visit another scene and then returned and took appellant to the Tomball jail (RR3 at 92). Sampson stayed behind at the scene for another 5-10 minutes (RR3 at 81-82).

Patin, a certified breath test operator, ultimately administered a breath test to appellant (RR3 at 95-150). He testified that a breath test subject must be monitored for 15 minutes leading up to the breath test to ensure that the subject does not belch, vomit, or cough because those things could invalidate the test (RR3 at 96-99). Thus, a breath test operator's failure to

---

[2] Sampson incorrectly testified that the walk and turn test had a total of 6 clues and, further, was unable to remember what all the clues were (RR3 at 46, 60-61).

3

honor the 15-minute observation period renders any breath test invalid (RR3 at 144). Patin testified that his typical procedure is to watch the person for 15 minutes, unlock the Intoxilyzer 5000 cabinet, verify that the Intoxilyzer sample temperature is within tolerance, and then push the green button to activate it (RR3 at 97-99).

Patin testified that his best estimate of the timing in appellant's case is as follows:

- Patin left the scene with appellant at 4:29 a.m. according to his patrol car video (RR3 at 143-44);

- Patin transported appellant to the Tomball police station, taking about 10 minutes (RR3 at 130, 140-42);

- Removed appellant from his car, scanned his ID card, and entered the station with her (RR3 at 131-32, 140-42);

- Took appellant with him to secure his gun in the gun locker before entering the jail, taking about 5 minutes (RR3 at 134, 140-42);

- Entered the jail and handcuffed appellant to a bench (RR3 at 134-35);

- Waited for Sampson to arrive, which took more than 5 minutes and probably closer to 20 minutes (RR3 at 136, 140-42);

- Walked to a different part of the jail, used the restroom, and returned to appellant and Sampson about 5 minutes later (RR3 at 135-36, 140-42);

- Upon returning, learned that Sampson had read appellant her statutory warnings and she'd agreed to provide a breath sample (RR3 at 136-37);

- Watched appellant for 15 minutes in accordance with Texas statutes, using a timer on his watch (RR3 at 137, 147);

- Took appellant into the Intoxilyzer room and turned on the Intoxilyzer, taking 3-4 minutes (RR3 at 140-42); and

- Inputted appellant's personal information, taking 5 minutes (RR3 at 142).

It took a little over an hour from the time Patin left the scene until appellant began her breath test (RR3 at 142-43). Thus, Patin estimated that appellant would have begun her breath test at approximately 5:29 a.m. (RR3 at 144).

Texas Department of Public Safety ("DPS") employee Carly Davies testified that she was a technical supervisor over the department's breath alcohol testing program (RR3 at 154). She confirmed that a breath test is invalid if the testing subject was not monitored for a minimum of 15 minutes leading up to the test (RR3 at 166). Davies testified that appellant began her breath test at 4:57 a.m. and, therefore, Patin's estimated timeline is impossible (RR3 at 167-69). She also testified that it would have been impossible for Patin to have left the scene at

4:29 a.m. and begin the 15-minute observation period at the station at 4:42 a.m. given Patin's recollection of the events (RR3 at 169).

The trial judge admitted appellant's breath test results over her objection. The testing showed that appellant's alcohol concentration was over twice the legal limit (RR4 at 15-20; RR5 at State's Exhibit 7).

The jury convicted appellant of driving while intoxicated, and further determined that her test result showed an alcohol concentration of at least 0.15 grams of alcohol per 210 liters of breath (CR at 72-74; RR4 at 83-84).

———————————◆———————————

## SUMMARY OF THE ARGUMENT

The trial court clearly abused its discretion in denying appellant's motion to suppress the breath test results in her DWI case. The evidence overwhelmingly shows that the breath test operator failed to perform the 15-minute observation period required by DPS and the Texas Administrative Code, yielding the resulting test inadmissible at appellant's trial.

———————◆———————

## ARGUMENT

**POINT OF ERROR**— THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING APPELLANT'S BREATH TEST RESULT (STATE'S EXHIBIT 7) OVER HER OBJECTION.

Appellant challenges the trial court's decision to admit her breath test result over her objection that the government violated the 15-minute observation requirement.

### A. STANDARD OF REVIEW

Any evidence obtained in violation of the law must be suppressed, i.e. excluded, from a criminal trial. TEX. CODE CRIM. P. ANN. art. 38.23 (Vernon 2005). The trial judge, as evidentiary gatekeeper, has the duty to determine whether evidence was

legally obtained, which includes the duty to make credibility determinations on factual issues relevant to its decision.

Appellate courts review a trial court's ruling on a motion to suppress evidence using a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). The standard requires almost total deference to the trial court's factual determinations that depend on a credibility assessment, but allows for de novo review of legal determinations and the application of the law to those factual determinations. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).

When a trial court does not make explicit factual findings, an appellate court must "assume that the trial court made implicit findings of fact supported in the record that buttress its conclusion." *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). This requires the appellate court to view the evidence in the light most favorable to the trial court's ruling and reverse the judgment "only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (*quoting State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). The court affords the prevailing party the strongest legitimate view of the

evidence and all reasonable inferences that may be drawn therefrom. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). The appellate court will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Story*, 445 S.W.3d at 732; *Turrubiate*, 399 S.W.3d at 150.

## B. APPLICABLE LEGAL PRINCIPALS

Applicant objected to her breath test results' admission on the basis that the government failed to honor the 15-minute observation period required by 37 TEX. ADMIN. CODE § 19.4(c)(1) (2014) (Dep't of Pub. Safety, Approval of Techniques, Methods, and Programs) (RR3 at 170-78; RR4 at 5-11). The judge denied appellant's motion (RR4 at 111).

Breath test results are inadmissible if secured in violation of DPS's rules: "A breath specimen taken at the request or order of a peace officer must be taken and analyzed under the rules of the department [of public safety]...." TEX. TRANS. CODE ANN. § 724.016 (Vernon 2011); *see also Atkinson v. State*, 923 S.W.2d 21, 23 (Tex. Crim. App. 1996), *abrogated on other grounds by Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002). The

9

rules for breath-alcohol-testing procedures are set forth in the Texas Administrative Code. *See* 37 TEX. ADMIN. CODE § 19.4(c) (2014). Those rules require an operator to continuously observe the person tested for at least 15 minutes before administering the test:

> an operator shall remain in the presence of the subject at least 15 minutes before the test and should exercise reasonable care to ensure that the subject does not place any substances in the mouth. Direct observation is not necessary to ensure the validity or accuracy of the test result....

37 TEX. ADMIN. CODE § 19.4(c)(1) (2014) (Dep't of Pub. Safety, Approval of Techniques, Methods, and Programs). Thus, a judge must suppress a breath test if the operator failed to honor the 15-minute observation period.

## C. ARGUMENT—ERROR

Appellant went to great lengths to show that the government failed to honor the 15-minute observation period prior to her breath test, and then moved to suppress the results on that basis. The State's contrary argument was that: (1) Patin testified that he watched appellant for 15 minutes using his

watch; (2) Patin testified that his timeline of events were merely estimated times; and (3) Patin testified that the patrol car video clock was not synchronized with the clock on the Intoxilyzer machine (RR3 at 145-50).

Although Patin did testify as outlined above, the trial court's decision to give it credence was unreasonable (*Dixon*, 206 S.W.3d at 590), was not a legitimate view of the evidence (*Duran*, 396 S.W.3d at 571), and is not reasonably supported by the record (*Turrubiate*, 399 S.W.3d at 150).

Patin's *best, good-faith estimate* of the timeline leading to appellant's breath test placed her breath test at about 5:29 a.m. based upon the following:

- Left the scene with appellant at 4:29 a.m. according to his patrol car video;
- Spent about 10 minutes driving appellant to the police station;
- Removed appellant from his car, scanned his ID card, and entered the station with her;
- Spent about 5 minutes taking appellant with him to secure his gun in the gun locker;
- Entered the jail and handcuffed appellant to a bench;
- Waited more than 5 and closer to 20 minutes for Sampson to arrive;
- Spent about 5 minutes using the restroom;

11

- Began the 15-minute observation period;
- Took appellant into the Intoxilyzer room and turned on the Intoxilyzer, taking 3-4 minutes; and
- Inputted appellant's personal information, taking 5 minutes, before her test began.

Appellant's first breath sample took place at 4:57 a.m. based on the Intoxilyzer printout. Therefore the 15-minute observation period would have to have begun no later than 4:42 a.m. and remained continuous until her test. But according to Patin, roughly 40 minutes expired from the time he left the scene until the time he began the observation period. The patrol video showed, and Patin confirmed, that he left the scene with appellant at 4:29 a.m.—a mere 13 minutes before the observation period was required to begin in order to comply with the statute.

The trial court merely dismissed his gatekeeping duty by noting that the patrol car clock and the Intoxilyzer clock were not synchronized, and saying that "non-synchronized clocks" are a fact issue for the jury to decide pursuant to *Worku v. State*, No. 14-13-00047-CR, 2014 WL 1330278 (Tex. App.—Houston (14th Dist.) April 3, 2014, no pet.) (RR4 at 10). This conclusion, however, is completely unreasonable, illegitimate, and illogical

given the entire record. First, it requires the gatekeeper to conclude that the police patrol car clock and the Intoxilyzer clock might reasonably be out of sync by 32 minutes.[3] This is simply not reasonable. Second, the trial court wholly ignored Davies' testimony that it was impossible for Patin to comply with the 15-minute observation period given Patin's best, good-faith timeline estimate.

The trial court's suppression ruling was simply outside the zone of any reasonable disagreement. The Court erred.

## D. ARGUMENT—HARM

A trial court's erroneous suppression ruling is subject to harmless error review. When the error involves a statutory, non-constitutional violation, the appellate court will not reverse the case unless the error affected an accused's substantial rights. TEX. R. APP. P. 44.2(b). In making this determination, the court reviews the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the error and how it might be considered in

---

[3] Patin's best estimate for when he gave the breath test was 5:29 a.m., whereas the actual test slip says that appellant first blew at 4:57 a.m.

connection with other evidence in the case. *Motilla*, 78 S.W.3d at 355 (*citing Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)).

This Court can be 100% sure that the trial court's error affected appellant's substantial rights because the breath test slip was the *only source of evidence* upon which the jury could have found the 0.15 breath concentration applicable and convicted her of a Class A misdemeanor. Moreover, the jury almost certainly placed great weight on the breath test in light of Sampson's and Patin's testimony of appellant's behavior that was consistent with sobriety, and with a young lady misled by her GPS and subject to an accident after dark (*see Statement of Facts, supra*).

This Court should sustain appellant's point of error, reverse her judgment and sentence, and order a new trial.

——————————◆——————————

## PRAYER

This Court should sustain appellant's point of error, reverse her judgment and sentence, and remand her case to the trial court for a new trial.

/s/ Peyton Z. Peebles III

_____

**PEYTON Z. PEEBLES, III**

CAPITAINE, SHELLIST, PEEBLES
& MCALISTER, LLP
405 Main Street, Suite 200
Houston, Texas 77002
Tel.:     (713) 715-4500
Fax:      (713) 715-4505
Email:  peebles@texaslegalteam.net
SBOT:  24013307

*Attorney for Appellant,*
*Vibha Harish Patel*

## CERTIFICATE OF COMPLIANCE

(a) This brief complies with the type-volume limitation of TEX. R. APP. P. 9.4(i) because it was produced on a computer and contains 2,459 words, including headings and footnotes but excluding the parts of the brief exempted by TEX. R. APP. P. 9.4, according to the computer software's word count function.

(b) This brief complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a proportionately spaced typeface using Ingeborg 14-point font in text and Ingeborg 12-point font in footnotes.

/s/ Peyton Z. Peebles III

_____

**PEYTON Z. PEEBLES, III**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing instrument has been delivered to Assistant District Attorney Alan Curry at the following address on February 11, 2015:

**Assistant District Attorney Alan Curry**
Harris County District Attorney's Office
1201 Franklin, Suite 600
Houston, Texas 77002
*(Service by e-file)*

/s/ Peyton Z. Peebles III

_____

**PEYTON Z. PEEBLES, III**