

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0388-12

**MARCOS TURRUBIATE, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### BEXAR COUNTY

ALCALA, J., delivered the opinion of the Court in which PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, and COCHRAN, J.J., joined. KELLER, P.J., filed a dissenting opinion. MEYERS, J., did not participate.

### O P I N I O N

In deciding this petition for discretionary review filed by the State, we address what constitutes exigent circumstances permitting police officers to enter a home without a warrant. We agree with the holding by the court of appeals that probable cause to believe that illegal drugs are in a home coupled with an odor of marijuana from the home and a police officer making his presence known to the occupants do not justify a warrantless entry. *Turrubiate v. State*, 365 S.W.3d 780, 788 (Tex. App.—San Antonio 2012). However, because the court of

appeals did not address the State's alternative ground for finding exigent circumstances regarding child safety, we remand the case to that court to do so.

## I. Background

An investigator with the Texas Department of Family and Protective Services, Christopher Lopez, went to the home of Marcos Turrubiate, appellant, to investigate allegations of marijuana use at that home, in which lived the six-month-old child of Erin Guller, appellant's girlfriend. When he knocked on the front door, appellant cracked the door open and stuck out his head. Lopez noticed a strong odor of marijuana emanating from the home. Lopez asked if Guller or her child were home, and appellant said they were not. Lopez told appellant that it was imperative that he speak with Guller, gave appellant his card, and left. Lopez immediately contacted his supervisor and the sheriff's department.

Lopez was soon met by Deputy Chavarria, and Lopez informed him that the home smelled like marijuana. Lopez and the deputy knocked on appellant's door. Appellant cracked open the door, and Lopez again noticed a strong odor of marijuana from within the home. Deputy Chavarria also smelled "a very strong, fresh odor of marijuana" coming "from the crack in the door." In light of his "suspicion to believe that there was possible marijuana in the house," the deputy determined that entry was required to "prevent [the marijuana] from being destroyed" and to preserve it for use in prosecution. He thought that if he left to obtain a warrant, it would "make the evidence available for destruction."

For this reason, Deputy Chavarria forcibly entered the home, pointed a taser gun at

appellant, handcuffed him, and placed him on the floor. He searched appellant and the surrounding area for weapons and asked him if there was marijuana in the home. Appellant confirmed that there was and indicated that it was in a backpack nearby. The deputy located a plastic baggie of marijuana in appellant's backpack after appellant consented to the search in writing. Deputy Chavarria placed him under arrest for possession of marijuana.

Appellant filed a motion to suppress the evidence. Appellant argued that the odor of marijuana alone does not justify a warrantless entry and that nothing indicated that he intended to destroy evidence. The trial court denied the motion.[1] The State offered the marijuana into evidence at trial, and the jury found appellant guilty and sentenced him to one year in prison, probated.

On direct appeal, appellant challenged the trial court's ruling on the motion to suppress, arguing that the circumstances failed to justify the deputy's warrantless entry into appellant's home. The court of appeals agreed and reversed. *Turrubiate*, 365 S.W.3d at 783. It held that "the record does not support the existence of exigent circumstances requiring immediate entry into the apartment without first obtaining a warrant" because "nothing in the record suggests that destruction of evidence was a risk under the circumstances." *Id*. at 787.

---

[1] The trial judge did not render a ruling at the hearing and indicated that she would issue a ruling before trial. About five weeks later and several months before the trial had begun, she tendered a letter to the parties informing them that she was denying the motion, and that letter was made a part of the record on appeal. *See Gearing v. State*, 685 S.W.2d 326, 329 (Tex. Crim. App. 1985) ("It is settled that when a pre-trial motion to suppress evidence is overruled, the accused need not subsequently object to the admission of the same evidence at trial in order to preserve error."). Neither party requested findings of fact or conclusions of law.

Although the State's brief argued that the risk to the child from the presence of marijuana in the home constituted an exigent circumstance that would permit the warrantless entry, the court of appeals did not address that argument, instead confining its analysis to the risk of the destruction of evidence as an exigent circumstance. *See id.* In its petition for discretionary review, as in its direct-appeal brief, the State contends that the risk to the child posed by the presence of marijuana in the home and the risk of the destruction of evidence each are exigent circumstances that justify this warrantless entry. We address only the risk of destruction of evidence because the court of appeals has not yet addressed whether there was an exigency based on any risk to the child.[2]

## II. Analysis of Exigent Circumstances Based on Risk of Destruction of Evidence

### A. Standard of Review

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447-48 (Tex. Crim. App. 2010). We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of law to the facts *de novo*. *Id.* When the trial court does not issue findings of fact, as here, findings that support the trial court's ruling are implied if the evidence, viewed in a light most

---

[2]     The State's sole ground in its petition for discretionary review states,

> The Court of Appeals' opinion fails to read the record in a light most favorable to the trial court's ruling and fails to consider the totality of the circumstances in contravention of the appropriate standard of review, resulting in an erroneous conclusion that no exigency existed to justify the deputy's warrantless entry into the appellant's residence in conflict with the United States Supreme Court's opinion in *Kentucky v. King*[, 131 S. Ct. 1849 (2011)].

favorable to the ruling, supports those findings. *See State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006). Almost total deference is given to the trial court's implied findings, especially those based on an evaluation of witness credibility and demeanor. *Valtierra*, 310 S.W.3d at 447. We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.*

Generally, in determining whether the State demonstrated probable cause and exigent circumstances, appellate review is limited to the record at the time of the suppression hearing. *O'Hara v. State*, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000). However, appellate review may include evidence adduced at trial when, as here, "the suppression issue has been consensually re-litigated by the parties during trial on the merits." *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996).

## B. Law Applicable to Warrantless Entry

A warrantless entry into a residence is presumptively unreasonable.[3] *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007). When a defendant moves to suppress evidence based on a warrantless search, the State has the burden of showing that probable cause existed at the time the search was made and that exigent circumstances requiring immediate entry

---

[3] Within the last few weeks, the Supreme Court reiterated that at the Fourth Amendment's "'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *Florida v. Jardines*, 569 U.S. ___, No. 11-564, 2013 U.S. LEXIS 2542, at *7-8 (U.S. Mar. 26, 2013) (not yet reported) (quoting *Silverman v. United States*, 365 U. S. 505, 511 (1961)). Citing *King*, the Supreme Court reaffirmed that "[a] police officer not armed with a warrant may approach a home in hopes of speaking to its occupants, because that is 'no more than any private citizen might do.'" *Id.* at *11 (quoting *King*, 131 S. Ct. at 1862).

made obtaining a warrant impracticable. *McNairy v. State*, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991). Probable cause exists when reasonably trustworthy circumstances within the knowledge of the police officer on the scene would lead him to reasonably believe that evidence of a crime will be found. *See id.* If probable cause exists, exigent circumstances may require immediate, warrantless entry by officers who are (1) providing aid to persons whom law enforcement reasonably believes are in need of it; (2) protecting police officers from persons whom they reasonably believe to be present, armed, and dangerous; or (3) preventing the destruction of evidence or contraband. *Gutierrez*, 221 S.W.3d at 685. We address the State's argument regarding the third circumstance and remand for the court of appeals to address the State's argument regarding the first circumstance.

### 1. Imminent Destruction of Evidence: *McNairy* factors and *Kentucky v. King*

Before the Supreme Court's decision in *Kentucky v. King*, this Court, in *McNairy v. State*, identified five factors relevant to a reasonable determination by the searching officers that evidence might be destroyed or removed before they could obtain a search warrant. *See Kentucky v. King*, 131 S. Ct. 1849 (2011); *McNairy*, 835 S.W.2d at 107. The five circumstances were as follows:

(1) the degree of urgency involved and the amount of time necessary to obtain a warrant;

(2) a reasonable belief that the contraband is about to be removed;

(3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought;

(4) information indicating that the possessors of the contraband are aware that the police are on their trail; and

(5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.

*McNairy*, 835 S.W.2d at 107.

The State argues that the court of appeals's application of these factors conflicts with the recent Supreme Court opinion in *King*. *See* 131 S. Ct. 1849. The State argues that, under *King*, the primary inquiry in deciding the legality of a warrantless entry is whether an officer reasonably believed that entry was necessary to prevent the destruction of evidence. *See id.* It contends that the existence of probable cause combined with the deputy making his presence known to the occupants and the strong odor of marijuana emanating from the home justified the deputy's inference that the destruction of evidence was imminent so as to permit the warrantless entry. We disagree.

In *King*, the Court held that, when probable cause and exigent circumstances exist, police officers may enter a home without a warrant, even when their conduct created the exigency, as long as the officers did not create the exigency by violating or threatening to violate the Fourth Amendment. *Id*. at 1858. The Court assumed that an exigency existed and decided only the question, "Under what circumstances do police impermissibly create an exigency?" *Id.* at 1862-63. The Court determined that police officers loudly knocking on the door of an apartment and announcing their presence did not violate or threaten to violate the

Fourth Amendment. *Id*. at 1863. It disavowed many state-court approaches, including faulting a police officer who, after acquiring evidence sufficient to establish probable cause to search, did not seek a warrant, but instead knocked on the door to speak with an occupant or to obtain consent to search. *Id*. at 1860.

Nothing in *King* supports the State's contention that a police officer who has probable cause to believe that there are illegal narcotics in a home may enter that home without a warrant after he has identified himself as an officer and made his presence known to the occupant if there is a noticeable odor of marijuana emanating from the home. *See id*. The State's approach would abandon the requirement that the record affirmatively show facts that reasonably indicate exigent circumstances that a defendant was attempting to, or would attempt to, destroy evidence, a requirement vital to the Supreme Court's holding in *King*. *Compare id*. at 1856-57. The State's interpretation would permit a presumption that an occupant will attempt to destroy illegal narcotics merely because he possesses them and is aware of the presence of police, and there is an odor of marijuana. The State's proposed approach is ultimately premised upon generalizations regarding the behavior of individuals who are in possession of illegal narcotics, namely, that they will take immediate action to destroy evidence if the police are at their door and an odor of marijuana fumes is present.

An approach based on such generalizations, however, is not authorized by *King*. *See id*. at 1862. The Supreme Court's analysis in *King* states,

> When law enforcement officers who are not armed with a warrant knock on a
> door, they do no more than any private citizen might do. And whether the

> person who knocks on the door and requests the opportunity to speak is a police officer or a private citizen, the occupant has no obligation to open the door or to speak. And even if an occupant chooses to open the door and speak with the officers, the occupant need not allow the officers to enter the premises and may refuse to answer any questions at any time. Occupants who choose not to stand on their constitutional rights but *instead elect to attempt to destroy evidence* have only themselves to blame for the warrantless exigent-circumstances search that may ensue.

*Id*. (internal citations omitted) (emphasis added). The Supreme Court did not presume that possessors of narcotics would destroy evidence upon learning of a police presence, but instead held that only those occupants who attempted to destroy evidence would be subjected to a warrantless exigent-circumstances search. *Id*. In other words, the Court required that the record show proof of imminent destruction based on affirmative conduct by those in possession of narcotics in a particular case. *See id*.[4]

In light of *King*, we conclude that the five *McNairy* factors no longer adequately assist a court in determining whether the record shows an exigent circumstance. *See id*.; *McNairy*, 835 S.W.2d at 107. The first circumstance—the degree of urgency involved and the amount of time necessary to obtain a warrant—and the third circumstance—the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought—are now immaterial to the exigent-circumstances evaluation. *See King*, 131 S. Ct. at 1962;

---

[4]     The Fifth Circuit has also recently explained that the mere possibility that evidence may be destroyed does not give rise to a finding of exigent circumstances. *United States v. Menchaca-Castruita*, 587 F.3d 283, 295-96 (5th Cir. 2009). It rejected the government's argument based on generalizations regarding drug traffickers and instead required evidence of more specific circumstances to support an officer's belief that delay to obtain a warrant will result in the destruction of evidence. *Id.*

*McNairy*, 835 S.W.2d at 107. The second circumstance, which permits consideration of whether there is a reasonable belief that the contraband is about to be removed, essentially allows the court to consider the ultimate question at issue, which asks whether there is proof that the officer reasonably believed that removal or destruction of evidence was imminent. *See King*, 131 S. Ct. at 1862. Although it remains appropriate for a court to consider *McNairy*'s fourth and fifth circumstances regarding whether occupants know the police are "on their trail" and whether the evidence is readily destructible, these factors are merely aids in a court's assessment of the entire record in determining whether the officer reasonably believed that the removal or destruction of evidence was imminent. *See id*.; *McNairy*, 835 S.W.2d at 107.

### 2. Circumstances Did Not Show Destruction of Evidence Imminent

The State contends that, given the strong odor of marijuana emanating from appellant's home, it was reasonable for the trial court to conclude that appellant was aware that the police were on his trail when he opened the door. Despite the lack of furtive movements, the State contends that these circumstances, alone, gave the officer reason to believe that appellant would attempt to destroy the marijuana absent immediate intervention. We disagree.

We can conceive of many instances in which an occupant possessing contraband would not attempt to destroy it after a police officer has identified himself at the occupant's door. For example, a police officer may have probable cause to believe that a high-school student is in possession of marijuana that he sells from his bedroom in his parents' home. The

student's parents, knowing that the officer is on the student's "trail" for the marijuana in their home, would not necessarily attempt to destroy the contraband. But the State's proposed approach would permit the warrantless search because an officer has probable cause and there is a presumed exigency that someone in possession of contraband will destroy it when he knows a police officer is on his trail. Or an occupant may know that it would be futile to attempt to destroy the illegal substance, such as someone in possession of 100 kilos of well-packaged cocaine. Or an occupant may decide to risk keeping the illegal substance despite the police presence, such as someone who believes he has successfully concealed the substance against police search. A reviewing court should not presume, therefore, that a showing that an occupant possessed contraband and that an officer with probable cause knocked and announced himself also shows that destruction of evidence was imminent.

Although the Supreme Court did not reach the ultimate question as to whether there actually were exigent circumstances in *King*, the Court discussed the evidence that tended to show the existence of those circumstances. *King*, 131 S. Ct. at 1862. This included evidence that (1) police officers smelled marijuana coming from an apartment and (2) after officers banged on the apartment door, they "'could hear people inside moving,'" and "'[i]t sounded as [though] things were being moved inside the apartment.'" *Id*. at 1854. Those noises led the officers to believe that "drug-related evidence was about to be destroyed." *Id*.

By comparison, the only facts that purportedly establish exigent circumstances in this case are the odor of marijuana and appellant's knowledge that a police officer was at

appellant's door. Lacking is the additional evidence discussed in *King* of attempted or actual destruction based on an occupant's movement in response to the police knock. *Id*. We require some evidence of exigency beyond mere knowledge of police presence and an odor of illegal narcotics.[5]

We agree with the court of appeals that nothing in the record suggests that destruction of evidence was imminent under the circumstances. *See Turrubiate*, 365 S.W.3d at 787. Appellant voluntarily answered the door both times Lopez knocked and did not engage in any conduct suggesting that he intended to destroy evidence, such as making furtive movements after seeing Deputy Chavarria at the door.

Similarly, the state court in *King* on remand from the Supreme Court determined that the facts in that case, which included the additional circumstance of sounds of things being moved inside the apartment, did not establish exigent circumstances. *King v. Commonwealth*,

---

[5] *See, e.g.*, *Gutierrez v. State*, 221 S.W.3d 680, 683 (Tex. Crim. App. 2007) (exigent circumstances existed where (1) officers had tip that appellant had a stolen computer; (2) appellant saw officers arrive at his home and met them outside; (3) officers smelled marijuana from inside the home; (4) officers questioned him about the computer; (5) he admitted having the stolen computer; (6) he "had bloodshot eyes and looked very nervous;" and (7) he said he would go inside and retrieve the computer while officers remained on the porch); *Estrada v. State*, 154 S.W.3d 604, 605-06 (Tex. Crim. App. 2005) (exigent circumstances where officer smelled marijuana, knocked and announced, then heard people "running" inside, and, after no one answered, he saw two vehicles quickly exiting the driveway); *United States v. Mata*, 517 F.3d 279, 289 (5th Cir. 2008) (exigent circumstances existed where officers knew that (1) occupants possessed contraband "with absolute certainty;" (2) knew they "had only hours" before the occupants would deliver the drugs; (3) numerous cars were entering and exiting the premises; and (4) "individuals were conducting counter-surveillance—keeping an eye out for law enforcement"); *United States v. Jones*, 239 F.3d 716, 721 (5th Cir. 2001) (exigency where officers suspected, but were not certain, that criminal activity was occurring within home, knocked, and saw firearm in plain view within reach of occupant when he opened the door), *cert. denied*, 534 U.S. 861 (2001).

386 S.W.3d 119, 122-23 (Ky. 2012, pet. for cert. filed). Concluding that the officers' belief that evidence was about to be destroyed was not supported by the record, the court noted that the sounds described by the officers "were indistinguishable from any household sounds, and were consistent with the natural and reasonable result of a knock on the door." *Id.* It explained that probable cause to believe that a crime has been committed does not necessarily create exigent circumstances and held that the State "must show something more than a possibility that evidence is being destroyed to" constitute an exigent circumstance. *Id*. at 123.

The Eighth Circuit recently held that facts arguably more incriminating than those in the present case did not constitute exigent circumstances under *King*. *United States v. Ramirez*, 676 F.3d 755, 761-63 (8th Cir. 2012). In *United States v. Ramirez*, the record revealed that officers had probable cause to believe that occupants of a hotel room were in possession of illegal drugs. *Id.* at 758. The officers knocked on the hotel-room door and heard "the sound of an individual approaching the door." *Id*. No one, however, answered the door. *Id.* Having already obtained a key to the room, an officer unsuccessfully attempted to open the door with it, while blocking the peephole and announcing "housekeeping." *Id.* When an occupant partially opened the door, the officers announced themselves, and the occupant tried to shut the door. *Id.* The officers forced the door open and found contraband within the room. *Id.*

Concluding that the circumstances did not justify the officers' warrantless entry, the Court noted that the officers had neither seen nor heard anything indicating that the occupants

might imminently destroy evidence. *Id.* at 763. The Court observed that there was "no dead bolt lock being engaged, no toilet flushing or a shower or faucet running, and no shuffling noises or verbal threats emanating from the room; nor did the officers have any information that an occupant of room 220 had attempted to escape through a window, nor any indication that these individuals were armed or dangerous." *Id*. The Court explained that, "when the police knock on a door but the occupants choose not to respond or speak, or maybe even choose to open the door and then close it, or when no one does anything incriminating, the officers must bear the consequences of the method of investigation they've chosen." *Id.* at 762. The Court observed that, even assuming the officers were "conducting a run-of-the-mill attempt to simply knock and gain entry," the occupant was not obligated to allow them to enter and was "within his bounds in his attempt to close the door." *Id.* The Court concluded that the occupant's attempt to shut the door in response to the officers' knock did not support the exigency and "[t]hat he did so, without more, does not bolster the claim that it was reasonable to conclude that the destruction of evidence was imminent." *Id.* Similarly, given the absence of evidence in the present case showing that the destruction of evidence was imminent, we agree with the court of appeals that the record does not support the deputy's warrantless entry into appellant's home on that basis.

**III. We Remand Case for Court of Appeals to Decide State's Alternative Ground**

In its brief to both the court of appeals and to this Court, the State alternatively contends that another exigent circumstance justified the warrantless entry, namely, that a

police officer in Deputy Chavarria's position would have reasonably believed that the presence of marijuana in the home was endangering the health and safety of the six-month-old baby who lived there.[6] *See Gutierrez*, 221 S.W.3d at 685. The emergency-doctrine exception to the Fourth Amendment permits police officers to make warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. *Id.*; *Shepherd v. State*, 273 S.W.3d 681, 683-84 (Tex. Crim. App. 2008). If a search is justified for that type of exigency, the police may seize any evidence that is in plain view or otherwise lawfully obtained during the course of their legitimate emergency activities. *See Shepherd*, 273 S.W.3d at 683-84; *Reasor v. State*, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000).

The State explains that an officer would have reasonably believed that exigent circumstances existed based on (1) appellant's admission that a child lived in the home; (2) the report submitted to the children's protective agency that alleged marijuana use inside that home; and (3) the noticeable odor of marijuana coming from inside the home. The court of appeals did not address the State's contention that the deputy's entry was justified by an objectively reasonable belief that the child required immediate aid. *See Gutierrez*, 221 S.W.3d at 685. Because this alternative ground, if supported by the record, may have been the basis to properly uphold the trial court's finding of exigent circumstances, the court of appeals erred

---

[6]     The State argues that, although the deputy did not testify that he entered the residence out of concern for the child's safety, objective evidence of an exigency will justify an officer's warrantless entry irrespective of his subjective motives. *See Bond v. United States*, 529 U.S. 334, 339 n.2 (2000) ("[T]he subjective intent of the law enforcement officer is irrelevant in determining whether that officer's actions violate the Fourth Amendment.").

in failing to address it. *See Valtierra*, 310 S.W.3d at 447-48 (reviewing court will sustain trial court's ruling if that ruling is "reasonably supported by the record and is correct on any theory of law applicable to the case"); TEX. R. APP. P. 47.1 (appellate court must hand down an opinion that addresses every issue raised and necessary to final disposition of appeal). We remand this case to the court of appeals, therefore, to decide whether the State made the argument regarding the imminent risk to the baby at trial and, if not, whether the court of appeals may nonetheless address that argument on appeal because it is an alternative basis to uphold the trial court's ruling. *See Gipson v. State*, 383 S.W.3d 152, 159 (Tex. Crim. App. 2012) (appellate court may not reverse conviction without first addressing preservation issues). We sustain the State's sole issue in part.

## IV. Conclusion

A police officer who enters a home without a warrant merely because he had probable cause to believe contraband was in that home, smelled marijuana, and identified himself to the occupant of that home violates the Fourth Amendment. We, however, reverse the judgment of the court of appeals and remand the case to that court to decide the State's appellate arguments with respect to the safety of the child.


Delivered: April 10, 2013

Publish