ACCEPTED
06-15-00095-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
7/13/2015 10:00:49 AM
DEBBIE AUTREY
CLERK

## No. 06-15-00095-CR

_____

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

7/13/2015 10:00:49 AM

DEBBIE AUTREY
Clerk

IN THE

SIXTH COURT OF APPEALS

AT TEXARKANA, TEXAS

_____

**JAMES ARTHUR BAXLEY,**

*Appellant*

**v.**

**THE STATE OF TEXAS,**

*Appellee*

_____

APPEAL FROM
THE 8TH DISTRICT COURT OF HOPKINS COUNTY, TEXAS
TRIAL COURT NO. 1424312

_____

**APPELLANT'S BRIEF**

_____

Wade A. Forsman
P.O. Box 918
Sulphur Springs, TX  75483-0918
903.689.4144, f. 903.689.7001
**wade@forsmanlaw.com**

Attorney for Appellant
James Arthur Baxley

ORAL ARGUMENT REQUESTED

**Appellant's Brief**

Pursuant to Texas Rule of Appellate Procedure 38(a), the following is a list of all parties to the trial court's judgment and the names and addresses of all trial and appellate counsel:

**Appellant**
James Arthur Baxley

**Appellant's appellate counsel**
Wade A. Forsman
P.O. Box 918
Sulphur Springs, TX  75483-0918
903.689.4144 telephone
903.689.7001 facsimile
**wade@forsmanlaw.com**

**Appellant's trial counsel**
Cynthia Braddy
1109 Main Street
Commerce, TX  75428
903.243.3577 telephone

**Appellee**
The State of Texas

**Appellee's trial & appellate counsel**
Matthew Howard Harris
Assistant District Attorney
8th Judicial District
P.O. Box 882 (75483-0882)
114 Main Street
Sulphur Springs, TX  75482
903.885.0641 telephone
903.885.0640 facsimile
**mharris@hopkinscountytx.org**

# TABLE OF CONTENTS

Identity of Parties and Counsel ……………………………………………… i

Table of Contents ……………………………………………………… ii

Index of Authorities ……………………………………………………. iv

Statement of the Case ……………………………………………….. 1

Issue Presented ……………………………………………………... 2

   POINT OF ERROR NO. 1: The trial court erred in crediting the testimony of Sergeant Mark Estes.

Statement of Facts ………………………………………………….. 2

   I.      The indictment…………………………………………. 2

   II.     Testimony by Sergeant Mark Estes………………………………. 3

           A.      Estes's testimony during the hearing on Baxley's
                   Motion to Suppress his Arrest…………………………….3

           B.      Estes's testimony at trial…………………………………. 5

   III.    Baxley convicted and sentenced; Baxley appeals……………………. 7

           A.      The jury renders a verdict of guilty and assesses
                   punishment at two years TDCJ, with no fine………………. 7

            B.      The trial court sentences Baxley…………………….. 8

           C.      Baxley appeals……………………………………….. 8

   Summary of the Argument…………………………………………. 8

Argument ……………………………………………………............ 8

Prayer ……………………………………………………………………….. 10

Certificate of Word Count ……………………………………………… 11

Certificate of Service……………………………………………………...11

# INDEX OF AUTHORITIES

## Cases

*Turrubiate v. State*,
     399 S.W.3d 147 (Tex. Crim. App. 2013)……………………………… 8, 9

*Valtierra v. State*,
     310 S.W.3d. 442 (Tex. Crim. App. 2010)……………………………… 9

## Court Rules

Tex. R. App. P. 9.4(i)(3) ……………………………………………………… 11

TEX. R. APP. P. 38(a) ……………………………………………………… i

# No. 06-15-00095-CR

_____

In the

Sixth Court of Appeals

at Texarkana, Texas

_____

James Arthur Baxley,

*Appellant*

v.

The State of Texas,

*Appellee*

_____

Appeal from
the 8ᵗʰ District Court of Hopkins County, Texas
Trial Court No. 1424312

_____

Appellant's Brief

_____

## Statement Of The Case

This is an appeal from a conviction for possession of less than one gram of a controlled substance (methamphetamine), a state jail felony, for which the trial court sentenced Appellant to the maximum – namely, two (2) years confinement in the State Jail Division of the Texas Department of Criminal Justice ("TDCJ").

**POINT OF ERROR NO. 1:** The trial court erred in crediting the testimony of Sergeant Mark Estes.

## STATEMENT OF FACTS

### I.     The indictment

On November 10, 2014, an indictment was filed against James Arthur Baxley (Vol. 1; p. 6). The indictment alleges a third-degree felony (Vol. 2; p. 5; l. 17-19). The indictment states that on or about September 23, 2014 Baxley possessed methamphetamine in an amount of less than one gram in a drug-free zone (Vol. 2; p. 4; l. 10-14).

This indictment was amended twice. The State filed its *Motion to Amend Indictment* on March 19, 2015 (Vol. 1; p. 23), and the trial court granted the motion on March 20, 2015 (Vol. 1; p. 26). The State filed a second *Motion to Amend Indictment* (Vol. 1; p. 76) on April 28, 2015, and the trial court granted the motion on May 21, 2015 (Vol. 1; p. 75). The result was that minutes before the commencement of voir dire, which took place on June 1, 2015, Baxley pleaded "not guilty" to a straightforward possession case, a state jail felony (Vol. 5; p. 8; l. 9).

## II. Testimony by Sergeant Mark Estes

On September 23, 2014 the Sulphur Springs Police Department ("SSPD") employed an individual named Mark Estes (Vol. 5; p. 167; l. 12-15). He held the rank of Sergeant. *Id.*

In an effort to expedite the proceedings, the trial court stated that it was aware that "Sergeant Mark Estes is employed by the Sulphur Springs Police Department and assigned to the Special Crimes Unit and has been a police officer for many years" (Vol. 5; p. 167; l. 12-15).

Estes testified on two separate occasions in this case. The first occasion was during a hearing that the trial court held on Baxley's motion to suppress his arrest. The second occasion was during the trial itself. Each is discussed below.

### A. Estes's testimony during the hearing on Baxley's Motion to Suppress his Arrest

This hearing is found in Volume 5. It starts on page 166, line 15, and it continues to page 175, line 22. The trial court described the issue it was being asked to decide this way:

> We're here based upon an oral motion to suppress raised by Ms. Braddy this morning. And the crux of it, as I understand, is that Mr. Estes arrested the defendant based upon two outstanding traffic warrants, slash, capias pro fines. And again I use that warrant, slash, because Ms. Braddy [*i.e.,* Baxley's trial counsel] makes a -- to her, an important legal distinction between the two, one of which would justify an arrest

and one -- and another set of circumstances might not, according to Ms. Braddy (Vol. 5; p. 167; l. 2-10).

Estes testified that on September 23, 2014 he learned that Baxley had two arrest warrants (Vol. 5; p. 169; l. 6). Estes believed these two warrants had been issued through a municipal judge (Vol. 5; p. 203; l. 7-8 & 16-18). Explained Estes, "Some of the patrol guys [in SSPD] actually get the city warrant list from the municipal court on a random basis" (Vol. 5; p. 169; l. 9-11). Estes testified that he had reviewed this warrant list because, said Estes, this warrant list just so happened to be "on the briefing table in the squad room" (Vol. 5; p. 169; l. 11-12).

These two warrants are wholly unrelated to the matters contained in the indictment. Instead, the two warrants were for traffic violations – specifically, an expired operator's license, and a failure to control speed. (Vol. 5; p. 171; l. 16-21).

Estes testified that based on this warrant list he and another SSPD officer drove to where Baxley lived (Vol. 5; p. 168; l. 15). Estes did not actually have in his possession a "physical copy of the warrant" when he drove to Baxley's house (Vol. 5; p. 168; l. 21-23). Instead, Estes "confirmed the warrant" through SSPD dispatch (Vol. 5; p. 168; l. 19), and once at Baxley's house he saw Baxley in the front yard (Vol. 5; p. 168; l. 20).

The trial court overruled the motion to suppress. In explaining its ruling the trial court said, "[T]he bottom line is, did the officer have a good-faith basis for

making the arrest based on the outstanding warrant? The Court will find that he certainly was legally authorized to do so, and the defendant's motion to suppress the arrest is denied" (Vol. 5; p. 175; l. 17-22).

## B. Estes's testimony at trial

This testimony is also found in Volume 5. It starts on page 180, line 17, and it continues to page 218, line 21. What follows is Estes's testimony.

SSPD has employed Estes for 14 years, the last 3 of which it has assigned Estes to the "Special Crimes Unit" or "SCU" (Vol. 5; p. 185; l. 4-5). The job duties of SCU are almost entirely – Estes says "99 percent" (Vol. 5; p. 185; l. 8) -- related to drug offenses. Estes described SCU's duties this way:

> Normally we work undercover CIs -- confidential informants -- that purchase narcotics for us from suspects or people who are distributing narcotics. And that's our job, is to try to shut that down or slow that down by using confidential informants. Most of the time that is our normal duties….. (Vol. 5; p. 197; l. 16-22).

On September 23, 2014 Estes learned that Baxley had "two active traffic warrants" that called for his arrest (Vol. 5; p. 181; l. 13-14). Armed with this information Estes went to where Baxley "was last known to reside at" (Vol. 5; p. 181; l. 17-18).

Estes drove to Baxley's residence in an unmarked car (Vol. 5; p. 182; l. 20-21). The car had no video or audio equipment (Vol. 5; p. 182; l. 22-24 & p. 206; l.

14). The car had no lights or siren (Vol. 5; p. 182; l. 18-20). The car had no field kit to test for illegal narcotics (Vol. 5; p. 209; l. 22-23 & P. 210; l. 5-7).

According to the two traffic warrants from a municipal judge, the place where Baxley resided was 204 Whitworth. *See* Defendant's Exs. Nos. 1 and 2 (Vol. 7). [1] However, Estes did not drive to 204 Whitworth (Vol. 5; p. 204; l. 18-25). Indeed, Estes testified that had no intention of driving to 204 Whitworth (Vol. 5; p. 207; l. 9-12).

Instead, Estes drove to a different location – namely, 1125 Elm, where he, Estes, believed Baxley lived (Vol. 5; p. 204; l. 24-25). Estes turned out to be right. Estes observed Baxley at that location in the front yard "working on a car" (Vol. 5; p. 181; l. 17-19).

As previously noted, Estes did not actually have a "physical copy of the warrant" when he drove to Baxley's house (Vol. 5; p. 168; l. 21-23). Instead, Estes radioed dispatch and confirmed that the warrants were good and that Baxley was still showing wanted (Vo. 5; p. 182; 14-16).

Estes then "made contact" with Baxley (Vol. 5; p. 182; l. 17). Estes informed Baxley, who was on his knees working on the driver's side floorboard area of his car, as to why he was there (Vol. 5; p. 183; l. 4-8). Estes observed Baxley going for

---

[1] Defendant's Exhibits 1 and 2 were admitted into evidence at Vol. 5; p. 204; l. 3-4.

his wallet in his right pants pocket (Vol. 5; p. 183; l. 18-19). Estes told Baxley to stand up, and when Baxley complied Estes cuffed him (Vol. 5; p. 183; l. 22-24). Estes then went for the wallet that he had seen Baxley going for, and in the wallet Estes found what he believed was methamphetamine. (Vol. 5; p. 184; l. 2-8 & p. 185; l. 20).

Estes did not field test the meth he believed he had found on Baxley. Instead, Estes field tested what he had found on Baxley after his return to the police station (Vol. 5; p. 205; l. 4-8).

### III. Baxley convicted and sentenced; Baxley appeals

#### A. The jury renders a verdict of guilty and assesses punishment at two years TDCJ, with no fine.

On June 1, 2015, the jury returned the following verdict -- guilty of possession of a controlled substance, namely methamphetamine, in an amount of less than one gram as charged in the indictment (Vol. 5; p. 267; l. 9-12).

Baxley, by and through his trial counsel, had previously filed *Defendant's Election as to Punishment* (Vol. 1; p. 72). In that document Baxley elected for the jury to assess punishment if convicted. *See also* Vol. 5; p. 8; l. 11-14, where the trial court confirms that if there is a finding of guilt, then Baxley elects for that same jury to assess punishment.

Accordingly, the jury assessed punishment on June 2, 2015 as follows -- confinement by the Texas Department of Criminal Justice for a term of two years and no fine (Vol. 6; p. 46; l. 19-21).

### B. The trial court sentences Baxley

On that same day, *i.e.,* June 2, 2015, the trial court sentenced Baxley to two years of confinement in the State Jail Division of the Texas Department of Criminal Justice (Vol. 6; p. 50; l. 5-8). The trial court assessed restitution in the amount of $180 (Vol. 6; p. 50; 16-18). The trial court assessed no fine (Vol. 6; p. 50; l. 9), and it waived attorney fees and court costs (Vol. 6; p. 50; l. 9-15).

### C. Baxley appeals

Baxley, by and through his trial attorney, filed a notice of appeal later that same day. Notice of Appeal (Vol. 1; p. 110).

## SUMMARY OF THE ARGUMENT

POINT OF ERROR NO. 1: The trial court erred in crediting the testimony of Sergeant Mark Estes.

## ARGUMENT

This Court of Appeals reviews the trial court's denial of a motion to suppress under a bifurcated standard of review. With regard to the trial court's factual findings, the standard of review is abuse of discretion. With regard to the trial court's application of the law to the facts, the standard of review is *de novo*. *Turrubiate v.*

*State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013)(citing *Valtierra v. State*, 310 S.W.3d. 442, 447-48 (Tex. Crim. App. 2010)).

It was error for the trial court to credit Estes's testimony. The notion that Estes, who was employed for three years in a work unit (SCU) that is devoted "99 percent" to drug-related offenses, fortuitously happened to see Baxley's name on a so-called "warrant list" for two traffic violations, and then, just so happened to drive to an address that is different from the address contained on this same "warrant list," in an unmarked car, and with no video or audio devices – curiously, Estes did not even bother to take the warrant upon which he supposedly relies -- strains the credulity of a reasonable person. Consider the following two exchanges:

> Q.   Okay. So is it your regular practice to take a look at the warrant list every day?
> A.   I don't do it every day. I just happened to look at it that day and seen that he [*i.e.,* Baxley] was wanted.

(Vol. 5; pp. 208-09; l. 25-3).

…….

> Q.   And how much of your job would you say -- as of September 23, 2014, at that time frame, how much of your job consists of actually serving warrants?
>        MR. HARRIS: Objection, Your Honor; relevance.
>        THE COURT: Overruled.
> A.   It just depends on case-by-case basis.
> Q.   (By Ms. Braddy)  So did you arrest everybody on the warrant list that day?
> A.   No, ma'am.

Q. And how did -- you just decided to choose Mr. Baxley to go and arrest on these warrants?

A. We were out and drove by his residence and seen him in the yard, and I had knowledge that he was wanted, so, yes, I stopped and made the arrest.

(Vol. 5; p. 198; l. 6-21). The record evidence like the foregoing can reveal one and only one conclusion. Estes, an experienced police officer, used the two traffic warrants from a municipal court as a pretext to go fishing – that is, to see if he could hook Baxley. Estes succeeded. Estes caught his fish.

Maybe one can credit Estes's creativity and resourcefulness. However, and as happened here, law enforcement should not be allowed to evade the general rule requiring that warrants be used.

## PRAYER

WHEREFORE, premises considered, Appellant, James Arthur Baxley, respectfully requests that the judgment of the trial court be reversed and remanded for new trial, and/or for such other and further relief to which he may establish himself entitled.

Respectfully submitted,

By: __/s/ Wade A. Forsman_
**Wade A. Forsman**
State Bar No. 07264257
P.O. Box 918
Sulphur Springs, TX  75483-0918
903.689.4144 East Texas

972.499.4004 Dallas/Fort Worth
903.689.7001 Facsimile
**wade@forsmanlaw.com**

Attorney for Appellant
James Arthur Baxley

### CERTIFICATE OF WORD COUNT

Pursuant to Tex. R. App. P. 9.4(i)(3), this document contains **2,636** words.

___/s/ Wade A. Forsman_
**Wade A. Forsman**

### CERTIFICATE OF SERVICE

This is to certify that on **July 13, 2015**, I served a true and correct copy of the above and foregoing *Appellant's Brief* by email on Matthew Howard Harris, Assistant District Attorney, at 114 Main Street, Sulphur Springs, Texas 75482.

___/s/ Wade A. Forsman_
**Wade A. Forsman**