**AFFIRMED; Opinion Filed October 20, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01000-CR

### FREDERICK DON GADDIS, Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the 380th Judicial District Court
### Collin County, Texas
### Trial Court Cause No. 380-81994-2013

# MEMORANDUM OPINION

Before Justices Fillmore, Stoddart, and Richter[1]
Opinion by Justice Stoddart

A jury convicted Frederick Don Gaddis of one count of aggravated sexual assault of a child and sentenced him to twenty years' confinement. The jury also convicted him of two counts of indecency with a child and sentenced him to twelve years' confinement for each offense. In two issues on appeal, Gaddis asserts the trial court abused its discretion by denying his motion to suppress his statements to law enforcement officials and by denying his motion for new trial. We affirm the trial court's judgment.

---

[1] The Hon. Martin Richter, Justice, Assigned.

MOTION TO SUPPRESS

Gaddis filed a pre-trial motion asking the trial court to suppress statements he made on April 29, 2013, May 1, 2013, May 6, 2013, and May 14, 2013, to Detective Chris Jones of the Plano Police Department. He also sought suppression of his statements to a polygraph examiner on May 6, 2013. The trial court conducted a hearing on the motion and listened to recordings of two of the conversations between Gaddis and Jones.

Jones testified at the hearing that he was assigned to the Children's Advocacy Center in Plano, Texas, and he investigated the allegations against Gaddis. Jones first contacted Gaddis by phone on April 29, 2013. During the phone call, Jones informed Gaddis that the complainant alleged Gaddis inappropriately touched her. Gaddis agreed to an in-person interview with Jones.

On May 1, 2013, Gaddis voluntarily met Jones at the Children's Advocacy Center. Gaddis was not transported to the center in police custody. The center is not part of the Collin County jail, and does not include any jail cells or holding cells. However, the center has a secure entrance and a person must be admitted to access rooms other than the reception area. Gaddis and Jones met in the "family room" at the center. Gaddis was not handcuffed and was not given the warnings required by *Miranda*[2] or the code of criminal procedure.[3] Jones testified: "As a matter of fact, I told him that he would not be arrested today, however, I would still be conducting an investigation." Jones let Gaddis know he was free to leave, he did not have to make a statement, and he could stop talking to Jones if he wanted to.

On May 1, Jones told Gaddis about the complainant's allegations. Jones also informed Gaddis that Jones did not need to interview him and could have obtained a warrant for his arrest. Gaddis denied the allegations during the interview.

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] *See* TEX. CODE CRIM. P. ANN art. 38.22 (West Supp. 2014).

The second time Jones and Gaddis spoke in person was on May 6, 2013, after Gaddis had undergone a polygraph examination. Gaddis drove himself to the polygraph examiner's office. Before Jones spoke to Gaddis on May 6, Jones spoke to the person administering the polygraph. The polygraph examiner told Jones that Gaddis failed the polygraph.

When Gaddis talked to the polygraph examiner and to Jones on May 6, he was not handcuffed and he was told he was free to leave. Jones said to Gaddis: "Even though we are not in a police room setting or whatever, if you don't want to talk about it no [sic] more, you don't have to. You can leave at any time." Gaddis did not leave, but instead talked to Jones and admitted to inappropriate contact with the complainant. After the interview, Gaddis left in his own car.

Jones arrested Gaddis on May 14, 2013, and interviewed him at the Plano jail. Prior to the interview, Jones *Mirandized* Gaddis and Gaddis executed a written statement showing he waived his *Miranda* rights. During the May 14 interview, Gaddis again admitted to inappropriate sexual contact with the complainant.

After hearing Jones's testimony, two recordings of conversations between Jones and Gaddis, and the arguments of counsel, the trial court concluded Gaddis had noncustodial conversations with Jones on May 1 and May 6, and he had noncustodial conversations with the polygraph examiner on May 6. After the May 1 and May 6 conversations, Gaddis was allowed to leave, was not placed under arrest, and was not detained in any way. The trial court further concluded the methods used to obtain Gaddis's May 14 statement did not violate the constitution or article 38.22 of the code of criminal procedure. The trial court denied Gaddis's motion to suppress.

Gaddis later filed a motion for new trial arguing the trial court erred by admitting Gaddis's statements to Jones because Gaddis did not receive proper warnings.

–3–

STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of the law to the facts de novo. *Id*. We give almost total deference to the trial court's determination of historical facts, particularly when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Id.* We give the same deference to the trial court's conclusions with respect to mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We review mixed questions of law and fact that do not turn on credibility and demeanor as well as purely legal questions de novo. *Id.* As a general rule, we view the evidence in the light most favorable to the trial court's ruling and afford the prevailing party the strongest legitimate view of the evidence, including all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013).

We review a trial court's denial of a motion for new trial under an abuse of discretion standard. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006). When a trial court denies a motion for new trial, it abuses its discretion "only when no reasonable view of the record could support the trial court's ruling." *Id*.

LAW & ANALYSIS

Gaddis argues the trial court erred by denying his motions to suppress and for new trial because he made statements to law enforcement officials without receiving proper warnings and, therefore, the admission of his statements violated article 38.22 of the Texas Code of Criminal Procedure and his constitutional rights.

The constitutionally required *Miranda* warnings and the warnings mandated by article 38.22 are intended to safeguard a person's privilege against self-incrimination during custodial interrogation. *Gardner v. State*, 306 S.W.3d 274, 293 (Tex. Crim. App. 2009); *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). A person is in custody only if, under all the objective circumstances, a reasonable person would believe his freedom of movement was restrained to the degree associated with an arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254-55 (Tex. Crim. App. 1996). The determination of custody is made on an ad hoc basis and depends entirely on the objective circumstances. *Id.*

The court of criminal appeals outlined four general situations that may constitute custody: (1) when the suspect is physically deprived of his freedom of action in any significant way; (2) when a law enforcement officer tells the suspect that he cannot leave; (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave. *Id.* at 255. The first three situations require that the restriction on a suspect's freedom of movement must reach "the degree associated with an arrest" instead of an investigative detention. *Id.* The fourth situation requires that the officer's knowledge of probable cause be manifested to the suspect. *Id.*

The record shows Gaddis was not in custody when he spoke to Jones on April 29, 2013, May 1, 2013, and May 6, 2013. He also was not in custody when he spoke to the polygraph administrator on May 6, 2013. Therefore, he was not entitled to *Miranda* warnings or warnings pursuant to article 38.22.

Gaddis's first conversation with Jones was by telephone. Nothing in the record indicates Gaddis was in custody during the telephone call, and the simple act of talking to an officer on the telephone does not constitute a custodial interrogation. *See Gardner*, 306 S.W.3d at 294-95; *see*

*also Bolton v. State*, No. 08-10-00091-CR, 2011 WL 241970, at *2 (Tex. App.—El Paso Jan. 26, 2011, no pet.) (not designated for publication); *Poitinger v. State*, No. 14-07-00155-CR, 2008 WL 1838981, at *7-8 (Tex. App.—Houston [14th Dist.] Apr. 24, 2008, no pet.) (mem. op., not designated for publication) (appellant not in custody when officer spoke to him on the phone and no *Miranda* warnings were required).

Likewise, when Gaddis met with Jones and the polygraph examiner in person, he was not in custody. During these meetings, Gaddis was not physically deprived of his freedom of action in any significant way and neither Jones nor the polygraph examiner created a situation that would lead a reasonable person to believe that his freedom of movement had been significantly restricted. Rather, Gaddis drove himself to both meetings, was not handcuffed, was told he was free to leave, and did leave on his own at the end of the meetings. There was no restraint on the freedom of his movements. *See Dowthitt*, 931 S.W.2d at 254-55.

Because Gaddis was not in custody on April 29, 2013, May 1, 2013, or May 6, 2013, when he spoke to Jones and the polygraph examiner, Gaddis was not entitled to warnings under the constitution or the code of criminal procedure. *See Herrera*, 241 S.W.3d at 526 (citing Tex. Code Crim. Proc. Ann. art. 38.22). We conclude the trial court did not err by denying Gaddis's motion to suppress these statements.

As to the May 14 interview, Gaddis argues that the statements he made on April 29, May 1, and May 6 were tainted and "any of the same or substantially the same statements subsequently made by Appellant [on May 14] ought to have been deemed equally and fully as [sic] tainted as well." He does not assert he was not properly warned on May 14. However, because we conclude Gaddis was not entitled to warnings on April 29, 2013, May 1, 2013, and May 6, 2013, and Gaddis did receive warnings before making his May 14, 2013 statement—at which time he was under arrest and in custody—we conclude the trial court also did not err by

denying the motion to suppress the May 14 statements. For the same reasons, we conclude the trial court did not abuse its discretion by denying his motion for new trial on the same grounds.

We overrule Gaddis's first and second issues.

CONCLUSION

We affirm the trial court's judgment.

       /Craig Stoddart/
       CRAIG STODDART
       JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
141000F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

FREDERICK DON GADDIS, Appellant

No. 05-14-01000-CR　　　V.

THE STATE OF TEXAS, Appellee

On Appeal from the 380th Judicial District Court, Collin County, Texas
Trial Court Cause No. 380-81994-2013.
Opinion delivered by Justice Stoddart.
Justices Fillmore and Richter participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 20th day of October, 2015.