**AFFIRM; Opinion Filed June 26, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00910-CR

**DONNIE BROOKS FREEMAN, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 86th Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause No. 18-10075-86-F**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Reichek
Opinion by Justice Schenck

Donnie Brooks Freeman appeals his conviction for possession of a controlled substance

with intent to deliver. In a single issue, appellant challenges the trial court's denial of his motion

to suppress. We affirm the trial court's judgment. Because all issues are settled in law, we issue

this memorandum opinion. TEX. R. APP. P. 47.4.

### BACKGROUND

On February 11, 2018, at about 11:48 p.m., Kaufman County Sheriff's Department Officer

Robert Siegmund was driving his patrol car on the Eastbound service road of Highway 80 when

he noticed a silver Ford Super Duty four-door pickup truck exit a parking lot without its headlights

on and travel the wrong way down a one-way street. Officer Siegmund executed a U-turn, turned

on his lights, and effectuated a traffic stop. As the officer approached the truck, the behavior of

the two occupants drew his attention. The female passenger was "heavily looking into the review

mirror," and both she and the driver, appellant, were moving around enough to catch the officer's attention. Officer Siegmund approached the truck on the passenger's side and noticed that both occupants were behaving nervously: "[r]apid breathing, continually kind of hemming and hawing and kind of looking around." Officer Siegmund then explained to appellant and his passenger why he stopped them.

Officer Siegmund questioned appellant and the passenger regarding why they were in that location and where they were coming from. Appellant and the passenger answered that they were going back to Oklahoma from Tyler. The officer then questioned them regarding their criminal history and asked for consent to search the vehicle and the passenger's articles. Both requests for consent were denied. At that point, Officer Siegmund called for a canine unit to come and perform an open-air sniff of the vehicle. Officer Kevin Shaw, a canine handler, arrived "a short time later" at approximately 12:07 a.m. Officer Shaw's canine alerted, which led the officers to discover a methamphetamine pipe, approximately twenty-three grams of methamphetamine, thirty-six pills of hydrocodone, and five baggies in a pouch in the front seat area of the truck.

Appellant was indicted for possession of a controlled substance, methamphetamine, with intent to deliver, between four and two hundred grams. He filed a motion to suppress, challenging the initial stop and the length of the detention. The trial court conducted a hearing on his motion. Officers Siegmund and Shaw testified. The trial court denied appellant's motion. Appellant did not request any findings or conclusions, and the court, unsurprisingly made none. Pursuant to a plea agreement and stipulation of evidence, appellant entered a plea of guilty to the charged offense and was sentenced to 19 years' confinement, a $1500 fine, court costs, and $180 in laboratory fees. The trial court certified appellant's right of appeal, and appellant filed this appeal of the trial court's order denying his motion to suppress.

DISCUSSION

We review a trial court's denial of a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of law to the facts de novo. *Id.* When the trial court does not issue findings of fact, as here, findings that support the trial court's ruling are implied if the evidence, viewed in a light most favorable to the ruling, would support them. *Id.* We give almost total deference to the trial court's implied findings, especially those based on an evaluation of witness credibility and demeanor. *Id.* We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.*

Appellant urges the trial court erred in denying his motion to suppress, arguing he was stopped on "a questionable alleged traffic offense" and the stop was overly prolonged, which amounted to an illegal fishing expedition for unrelated criminal activity.

An officer may make a warrantless traffic stop if the "reasonable suspicion" standard is satisfied. *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015). Reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaging in criminal activity. *Id.* In the context of a traffic stop, police officers are justified in stopping a vehicle when the officers have reasonable suspicion to believe that a traffic violation has occurred. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018). The transportation code requires a driver to display each lighted lamp and illuminating device required by the code at nighttime and when light is insufficient or atmospheric conditions are unfavorable so that a person or vehicle on the highway is not clearly discernible at a distance of 1000 feet ahead. *See* TEX. TRANSP. CODE ANN. § 547.302(a). Additionally, the

transportation code requires drivers to follow the designated direction of one-way roads. *See id.* § 545.059(b).

Officer Siegmund testified that he observed appellant driving without headlights at 11:48 p.m. and that it was dark outside. He also testified that he observed appellant driving in the opposite direction designated by the signs on the road. Appellant offered no controverting evidence. Viewing this uncontroverted evidence in the light most favorable to the trial court's ruling, the trial court did not abuse its discretion in finding Officer Siegmund had reasonable suspicion to make the warrantless stop of appellant. *See Turrubiate*, 399 S.W.3d at 150.

Having concluded Office Siegmund was justified in stopping the truck because he had reasonable suspicion to believe that a traffic violation occurred, we next address appellant's complaint that the officer overly prolonged the stop.

A traffic stop made for the purpose of investigating a traffic violation must be reasonably related to that purpose and may not be prolonged beyond the time to complete the tasks associated with the traffic stop. *Lerma*, 543 S.W.3d at 190. During a traffic stop the officer may request certain information from a driver, such as the driver's license, vehicle registration, and proof of insurance, and run a computer check on that information. *Id.* An officer is also permitted to ask drivers and passengers about matters unrelated to the purpose of the stop, so long as the questioning does not measurably extend the duration of the stop. *Id.*

Once the investigation of the conduct that was the subject of the traffic stop is concluded, the continued detention of the subject is permissible only if the officer, on the basis of observations and information developed during the stop, reasonably suspects that the person detained had engaged, was engaging, or was soon to engage in criminal conduct. *Kimbell v. State*, No. 05-11-01211-CR, 2013 WL 4568049, at *4 (Tex. App.—Dallas Aug. 26, 2013, pet. ref'd). The detention may be prolonged beyond the point at which the purpose of the initial stop is complete if there is

reasonable suspicion to believe another offense has been or is being committed. *Id.* However, once the reason for the stop has been satisfied, the stop may not be used as a "fishing expedition" for unrelated criminal activity. *Id.* There is no bright-line rule as to how long a traffic stop may reasonably continue; instead, courts consider whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which it was necessary to detain the defendant. *Dominy-Gatz v. State*, No. 05-15-01194-CR, 2016 WL 7321435, at *8 (Tex. App.—Dallas Dec. 16, 2016, pet. ref'd) (mem. op., not designated for publication) (citing *United States v. Sharpe*, 470 U.S. 675, 683–88 (1985)).

Furthermore, a dog sniff is aimed at detecting ordinary criminal activity and is not an ordinary incident of a traffic stop. *Zimmerman v. State*, No. 05-17-00492-CR, 2018 WL 3968419, at *5 (Tex. App.—Dallas Aug. 20, 2018, pet. granted) (mem. op., not designated for publication) (citing *Rodriguez v. United States*, 135 S.Ct. 1609, 1615 (2015)). Thus, absent facts showing reasonable suspicion that a different offense has been, is being, or soon will be committed, the officer may not prolong the traffic stop to conduct a dog sniff. *Id.*

A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude the person detained is, has been, or soon will be engaged in criminal activity. *See Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). This standard is an objective one that disregards the actual subjective intent of the arresting officer and looks, instead, to whether there was an objectively justifiable basis for the detention. *See id.* It also looks to the totality of the circumstances; those circumstances may all seem innocent enough in isolation. *See id.* The relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular non-criminal acts. *See id.*

The record contains a video recording of the stop as well as Officer Siegmund's testimony. The officer testified that at 11:48 p.m., he first noticed appellant's truck driving without its headlights on and travelling the wrong way down a one-way street. The video then shows that about eight minutes into the traffic stop, Officer Siegmund steps away from appellant's truck and speaks into his radio. Officer Siegmund testified that after he had spoken to appellant and the passenger and asked for and been denied consent to search the vehicle and the passenger's articles, Officer Siegmund called for a canine unit to come and perform an open-air sniff of the vehicle. At sixteen minutes into the traffic stop, Officer Shaw arrives; at nineteen minutes into the traffic stop, the canine unit approaches appellant's truck; and at twenty-one minutes into the traffic stop, the canine alerted. Thus, assuming the trial court found the initial stop concluded when Officer Siegmund called for a canine unit to perform an open-air sniff of appellant's truck at eight minutes into the traffic stop, the stop was prolonged an additional thirteen minutes to conduct a canine sniff search.

Officer Siegmund testified that, at the time of trial in June 2018, he had nearly fifteen years of experience as a patrol officer. He testified that the area in which he noticed the truck driving at night without its headlights on was one in which he had made "numerous drug arrests from people coming out of there." Prior to the traffic stop being fully resolved, the officer observed both appellant and the passenger moving around excessively and the passenger heavily looking into the rearview mirror, which he described as both "pre-attack indicators"[1] and behavior indicative of hiding drugs. Officer Siegmund also noticed a level of nervousness well in excess of that experienced by other drivers he had pulled over for traffic offenses. He testified that in his years of experience once he explains the reason he stops people, "their fears are put side pretty quickly,"

---

[1] Officer Siegmund testified that pre-attack indicators are "different things people may do to be setting you up to take advantage of you." He went on to state that officers at the sheriff's department are taught to be aware of "everything as they're making contact" and that he himself had "gotten into situations with people in traffic stops that were bad due to my lack of . . . initial observations."

but in this case, he observed appellant and the passenger did not calm down but instead remained highly agitated. He further testified at the hearing on the motion to suppress that, in his experience, drivers and passengers tend to grow calmer during a stop and that appellant and the passenger did not. Finally, he testified that after questioning the two regarding their trip, the location and timing of their explanation did not make sense to him.[2]

We conclude the police did not illegally extend appellant's detention because reasonable suspicion that appellant was engaged in criminal activity arose in the course of the traffic stop and before the traffic investigation was fully resolved. Prior to completion of the traffic stop investigation, Office Siegmund had developed specific articulable facts, which taken together with rational inferences from those facts, led him to conclude appellant was, had been, or soon would be engaged in criminal activity. *See Kimbell v. State*, 2013 WL 4568049, at \*6.[3] Viewing this uncontroverted evidence in the light most favorable to the trial court's ruling, and looking at the totality of the circumstances while giving almost total deference to the trial court's determination of historical facts, we conclude the trial court did not err in finding these facts gave rise to reasonable suspicion to justify Officer Siegmund's further detention of appellant to continue his investigation. *See Derichsweiler*, 348 S.W.3d at 914; *id.* at \*6 (concluding officer had reasonable suspicion to further detain appellant and continue investigation and to justify officer's six-minute detention of appellant to conduct canine sniff); *see, e.g.*, *United States v. Richmond*, 915 F.3d 352, 359 (5th Cir. 2019) (concluding that while no probable cause existed to support warrantless search, "[t]he information [the officer] had by that time—the wobbly tires, stripped bolts, [defendant's]

---

[2] "They were going back to Oklahoma from Tyler and the Tyler is, kind of, odd. It was an employee, not unexplainable and not impossible. Just that he -- I'll be honest -- the land at that particular location in our particular county on that particular trip seemed odd to me."

[3] In *Kimbell*, seventeen minutes into the traffic stop, the police officer told defendant she was "clear" and he was not going to arrest her for any traffic violations; at that point, purpose of traffic stop had been effectuated, however, during traffic stop, officer had observed defendant was nervous, shaky, and chatty, and confirmed defendant had been previously arrested for drug offense and was living with known methamphetamine user; we concluded the trial court did not err by finding those factors gave rise to reasonable suspicion sufficient to justify six-minute detention to conduct canine sniff on defendant's car.

nervousness, and the new registration on an older vehicle stopped in a trafficking corridor—certainly gave [the officer] the reasonable suspicion of drug trafficking needed to justify extending the traffic stop to investigate further").

We conclude the trial court did not abuse its discretion in denying appellant's motion to suppress.   Accordingly, we overrule appellant's sole issue.

CONCLUSION

We affirm the trial court's judgment.


/David J. Schenck/
DAVID J. SCHENCK
JUSTICE


DO NOT PUBLISH
TEX. R. APP. P. 47

180910F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

DONNIE FREEMAN, Appellant

No. 05-18-00910-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 86th Judicial District Court, Kaufman County, Texas
Trial Court Cause No. 18-10075-86-F.
Opinion delivered by Justice Schenck, Justices Osborne and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 26th day of June, 2019.