# NOS. 12-17-00164-CR
# 12-17-00165-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JAY EBARB,*<br>*APPELLANT* | *§* | *APPEAL FROM THE 159TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | *§* | *ANGELINA COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Jay Ebarb appeals his convictions for obstruction and injury to an elderly individual. He presents two issues on appeal. We affirm.

### BACKGROUND

On August 3, 2015, Appellant was charged by indictment with obstruction. The case proceeded to a bench trial on January 26, 2017. The trial was recessed and resumed on February 24, 2017. During the recess, Appellant filed a motion to suppress alleging that officers made a warrantless arrest without probable cause and unlawfully entered his residence to make the arrest. Appellant sought to suppress his arrest and any statements he made as a result of that arrest. The motion was carried with the bench trial. When the evidence concluded, the trial court denied Appellant's motion to suppress and found him "guilty." Appellant was sentenced to thirty years imprisonment.

Appellant's obstruction case was tried concurrently with two other cases. On October 5, 2016, Appellant was charged by indictment with injury to an elderly person. After hearing all of the evidence, the trial court found Appellant "guilty" and sentenced him to forty years imprisonment. Appellant was also convicted of failure to appear and sentenced to twenty-five

years imprisonment.[1]  Each of the three offenses was enhanced based on two prior felony convictions.  This appeal followed.

**MOTION TO SUPPRESS**

With regard to his obstruction conviction, Appellant argues that the trial court erred in denying his motion to suppress because he was arrested without a warrant or valid warrant exception.

**<u>Standard of Review and Applicable Law</u>**

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review.  *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).  A trial court's decision to grant or deny a motion to suppress is generally reviewed under an abuse of discretion standard.  *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008).  We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor.  *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008).  When deciding a motion to suppress evidence, a trial court is the exclusive trier of fact and judge of the witnesses' credibility.  *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002).  Accordingly, a trial court may choose to believe or disbelieve all or any part of a witness's testimony.  *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

When a trial court does not make express findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record.  *Lujan v. State*, 331 S.W.3d 768, 771 (Tex. Crim. App. 2011). Therefore, the prevailing party is entitled to "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence."  *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011).  When all evidence is viewed in the light most favorable to the trial court's ruling, an appellate court is obligated to uphold the ruling on a motion to suppress if that ruling was supported by the record

---

[1] Appellant also appealed his conviction for failure to appear.  However, he filed a motion to dismiss after his attorney filed a brief in accordance with *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).  We granted the motion to dismiss that appeal.

and correct under any theory of law applicable to the case. *See Ross*, 32 S.W.3d at 856; *Carmouche*, 10 S.W.3d at 327; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

The initial burden of proof on a motion to suppress on Fourth Amendment grounds rests with the defendant. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005). The defendant meets this burden by demonstrating that the seizure occurred without a warrant. *See id.* Thereafter, the burden shifts to the state to prove the reasonableness of the warrantless seizure. *See id.* The state may satisfy this burden by showing that one of the statutory exceptions to the warrant requirement is met. *Id.* When a defendant moves to suppress evidence based on a warrantless search, the state has the burden of showing that probable cause existed at the time the search was made and that exigent circumstances requiring immediate entry made obtaining a warrant impracticable. *Turrubiate v. State*, 399 S.W.3d 147, 151 (Tex. Crim. App. 2013). If probable cause exists, exigent circumstances may require immediate, warrantless entry by officers who are (1) providing aid to persons whom law enforcement reasonably believes are in need of it; (2) protecting police officers from persons whom they reasonably believe to be present, armed, and dangerous; or (3) preventing the destruction of evidence or contraband. *Id.*

## Analysis

In Appellant's motion to suppress, he contended that law enforcement unjustifiably entered his trailer without a warrant and performed an illegal search. He further argued that he was unlawfully detained and arrested without a warrant. The trial court overruled the motion.

At trial, Jessica Biggs testified that she was working at the Okay Convenience Store on May 19, 2015, when she saw a man come into the store and yell at a woman. The woman went outside and got into the back seat of a vehicle. The man grabbed the woman by the hair and pushed her head into the back of the driver's seat. The woman exited the car and pumped gas, after which the man, woman, and another man got into the vehicle and drove away. Biggs called the police because of the way the woman was treated and because the vehicle was swerving in traffic. She provided both a description of the vehicle and a license plate number. Biggs was unable to remember what either the man or woman looked like because she only saw them once.

Officer Randy Brooks of the Lufkin Police Department responded to the call at the convenience store. The store clerk advised Brooks that a male grabbed a female by the hair, slammed her head into the seat, and drove off in a reckless manner. The store clerk also provided Brooks with the vehicle's description and license plate number. Brooks subsequently

received a call regarding a traffic accident that involved a vehicle fitting the store clerk's description and with the same license plate number. Brooks left the convenience store to go to the scene of the collision. However, before he arrived at the scene, Brooks received a call about a disturbance at Appellant's residence. When he arrived at Appellant's residence, Brooks saw the vehicle in question with the same license plate as that described by the convenience store clerk.

Brooks testified that Officers Jason Vance and Trooper Christopher Nash were already at the residence when he arrived. Brooks learned that a man and woman were in a small travel trailer behind the residence. The officers were trying to get the woman out of the trailer to check her welfare because of the previous assault at the convenience store as well as Appellant's current behavior. According to Brooks, Appellant yelled that he was not going to open the door and that neither he nor the woman were coming outside. Appellant further threatened to shoot the officers if they attempted to enter the trailer. Based on Appellant's statements, Brooks contacted his supervisor and requested the SWAT team. Brooks testified that the SWAT team is usually called to hold a scene while officers obtain a search warrant. However, in this instance, Brooks testified that he and the other officers heard an assault occur inside the trailer, and the officers felt they had to enter the trailer immediately to prevent the assault from continuing. Specifically, Brooks heard pots and pans rattling and then heard skin-on-skin contact consistent with a punch or slap. Brooks further testified that Appellant's wife, the woman in the trailer, told the officers that she was not going to leave the trailer but that her tone sounded repetitive, robotic, and forced. The officers then decided to take measures to enter the trailer. Kicking in the door was unsuccessful, so Appellant's brother provided a pick ax from his garage so that SWAT could enter the trailer.

Trooper Nash and Officer Vance, who worked for the Lufkin Police Department at the time of the offense, and Sergeant Dale Jowell of the Lufkin Police Department corroborated Brooks's testimony. Additionally, Nash testified that he heard Appellant's wife say, "Jay, stop. You're hurting me." Nash and Jowell testified that Appellant's wife was bleeding from her head and face when they entered the trailer. E.M.S. treated Appellant's wife and transported her to the hospital.

Appellant points out that his wife testified that no assault occurred at the convenience store and that she was driving the vehicle when the motor vehicle collision occurred. She also

4

testified that while Appellant was upset with her because of the accident, no assault occurred at their residence. She stated that her injuries may have been caused by glass from the officers forcing their way into the trailer. She further testified that her other wounds occurred during a fight earlier in the day. Appellant's wife contradicted all of the officers' testimony and version of events.

Aside from Appellant's wife's testimony, the trial court heard evidence that (1) Officer Brooks responded to the call at the convenience store where he learned that a man grabbed a woman by the hair and slammed her head into the vehicle's seat; (2) when Brooks arrived at Appellant's home in response to a disturbance call, he saw the vehicle described by the store clerk; (3) although officers were trying to get Appellant's wife out of the trailer to check her welfare, Appellant refused to exit or allow the officers to enter; (4) Appellant threatened to shoot the officers if they attempted entry; (5) Appellant's wife's refusals to exit the trailer sounded robotic and forced; (6) Trooper Nash heard Appellant's wife say, "Jay, stop. You're hurting me[;]" (7) Brooks heard skin-on-skin contact consistent with a punch or slap; and (8) having heard this assault, officers felt a need to enter the trailer immediately to prevent the assault from continuing. As the sole judge of the witnesses' credibility, the trial court could have chosen to believe the officers's testimony and not that of Appellant's wife. *See Maxwell,* 73 S.W.3d at 281; *Ross*, 32 S.W.3d at 855. We defer to the trial court's determination of historical facts when they turn on witness credibility or demeanor. *Neal*, 256 S.W.3d at 281. Based on the officers' testimony, the trial court could have found that the officers heard an assault occurring in their presence and that they needed to enter the trailer to protect Appellant's wife from any further assault. *See Turrubiate,* 399 S.W.3d at 151. Accordingly, the trial court could reasonably conclude that officers had probable cause to enter the trailer, and that exigent circumstances required immediate entry and made obtaining a warrant impracticable, and that Appellant's warrantless arrest was justified. *See id*. Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that the trial court did not abuse its discretion by denying Appellant's motion to suppress. *See Lujan*, 331 S.W.3d at 771; *see also Shepherd*, 273 S.W.3d at 684. We overrule Appellant's first issue.

In the bodily injury to an elderly individual case, Appellant contends the evidence is insufficient to support his conviction. Specifically, Appellant argues that the victim's testimony is legally insufficient to support the trial court's verdict.

**Standard of Review**

In Texas, the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). This standard gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010). In a bench trial, the trial court is the sole judge of the credibility of witnesses and may accept or reject any or all of the testimony given by witnesses. *Johnson v. State*, 571 S.W.2d 170, 173 (Tex. Crim. App. 1978).

When the record supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). A conclusion of guilt can rest on the combined and cumulative force of all the incriminating circumstances. *Hernandez v. State*, 190 S.W.3d 856, 864 (Tex. App.–Corpus Christi 2006, no pet.).

**Analysis**

To satisfy the elements of injury to an elderly person in this case, the State was required to prove that Appellant intentionally or knowingly caused bodily injury to Johnnie Ebarb, an individual sixty-five years of age or older at the time of the offense, by biting her. *See* TEX. PENAL CODE ANN. § 22.04(a), (c)(2) (West Supp. 2017). "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8) (West Supp. 2017).

According to Appellant, the State failed to carry its burden of proving injury to an elderly person. Specifically, Appellant contends the State failed to prove that he caused bodily injury to the victim, Appellant's mother, by biting her.

Officer Gerardo Salinas of the Lufkin Police Department testified that he responded to a call regarding an assault in progress on September 26, 2016. Officer Salinas testified that after he arrived on scene, he identified the victim as Johnnie Ebarb. Johnnie is Appellant's mother and was seventy-three years old at the time of the incident. Officer Salinas testified that the ambulance and EMT were on scene when he arrived. Johnnie was bleeding and the EMT was bandaging her wound. Officer Salinas stated that the victim was crying and screaming "he bit me" when Salinas approached her. Officer Salinas also spoke with Appellant's brother, Ricky Ebarb, who was also wounded. The officer learned from Ricky that he struck Appellant on the head after witnessing Appellant bite Johnnie's arm. Officer Salinas's testimony was corroborated by his body cam video, which was admitted into evidence. On the video, Ricky explains that he hit Appellant when he saw Appellant bite Johnnie. The video also captured audio of Johnnie crying and exclaiming that "he bit me."

Johnnie also testified at trial. She testified that she remembered the incident for which the Lufkin Police Department was called. However, she testified that she was upset that day and that Appellant did not bite her. She claimed that Appellant does not have upper teeth with which to bite and that she cut her arm on glass. When the State asked Johnnie about the fact that she told the officers on scene that Appellant bit her, she responded:

> I know. I was upset and stuff because I was trying to keep him from going in the house where his daddy was. I was the one when he got out of that truck and stuff, I told him he was not going out. I went to push him. I tore his shirt off. I tore his necklace off. He kept pushing me and pushing me. He never laid a hand on me. I got five kids and they never laid a hand on me.

When the State showed Johnnie the pictures of her bandaged injuries and asked how she was injured, she claimed to not know where the injuries came from. She believed she cut her arm on glass in the driveway when she fell while pushing Appellant. She also testified that her anxiety prompted her to tell officers that Appellant bit her and that her other children were incorrect when they told officers that Appellant assaulted her.

Stacy Richardson, the victim assistance coordinator for the Angelina County District Attorney's Office, testified that she spoke with Johnnie approximately three months after the

assault. According to Richardson, Johnnie admitted that Appellant bit her and she requested victim assistance.

As the sole judge of the witnesses's credibility, the trial court could have chosen to believe Johnnie's statements immediately following the alleged assault and disregarded her contrary testimony. *See Johnson*, 571 S.W.2d at 173. Additionally, the body cam footage, testimony of Richardson and Officer Salinas, and evidence of Johnnie's injuries lends further support to the trial court's finding that Appellant bit Johnnie, an elderly individual. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found that Appellant intentionally or knowingly caused bodily injury to Johnnie Ebarb, an individual over the age of sixty-five, by biting her. *See* TEX. PENAL CODE ANN. §§ 1.07(a)(8); 22.04(a), (c)(2). As a result, the evidence is sufficient to support Appellant's conviction. We overrule Appellant's second issue.

## DISPOSITION

Having overruled Appellant's first and second issues, we ***affirm*** the trial court's judgments.

BRIAN HOYLE
Justice

Opinion delivered May 31, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

8



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 31, 2018**

**NO. 12-17-00164-CR**

**JAY EBARB,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 159th District Court

of Angelina County, Texas (Tr.Ct.No. 2015-0513)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 31, 2018**

**NO. 12-17-00165-CR**

**JAY EBARB,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 159th District Court
of Angelina County, Texas (Tr.Ct.No. 2015-0631)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*