

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0936-20

**JEREL CHINEDU IGBOJI, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### FORT BEND COUNTY

NEWELL, J., delivered the opinion of the Court in which HERVEY, RICHARDSON, WALKER, SLAUGHTER and MCCLURE, JJ., joined. YEARY, J., filed a dissenting opinion in which KELLER, P.J., and KEEL, J., joined.

### <u>OPINION</u>

For exigent circumstances to justify a warrantless seizure of personal property, such as a cell phone, the record must show that law enforcement officers reasonably believed that evidence would be

imminently destroyed if they waited to obtain a warrant to seize the property.  Affirmative conduct by the suspect is not required, but it is one circumstance in the totality-of-the-circumstances test that may show that the potential destruction of evidence was imminent.  However, the absence of such affirmative conduct does not foreclose an exigent-circumstances determination.  We agree with the State that the court of appeals erred to hold that it did.  We reverse the court of appeals and remand for a proper exigent-circumstances analysis.

## Background

Appellant worked at a Kentucky Fried Chicken in Stafford, Texas.  Shortly after the restaurant closed for the night on December 10, 2015, two armed men entered the restaurant through an unsecured back door.  The men forced Appellant and his coworkers into the freezer while they took the money from the cash registers.  After taking the money, the men fled, and the manager triggered the security alarm.  Officers with the Stafford Police Department responded to the restaurant and began investigating the robbery that night.

### The Investigation

After responding to the restaurant, officers interviewed the employees that were present during the robbery.  Through those interviews, officers learned that the robbers had entered through the

back door, which Appellant had left unsecured when he took the trash out that night. Appellant cooperated with the investigation and told officers that he was asked to take the trash out by the manager, Tammi Ball. When officers spoke to Ball, however, she told them that Appellant had offered to take the trash out, which she found to be suspicious because, according to her, Appellant usually avoided work. Ball also said that Appellant took the trash out through the restaurant's back door, which was against the restaurant's policy.

The next morning, the Stafford Police Department assigned Detective Michael Ramirez to investigate the robbery. Detective Ramirez spoke with some of the restaurant employees. One of the employees told Detective Ramirez that Appellant had posted several videos that captured the initial police response to the robbery on Snapchat, a social media platform. The employee showed Detective Ramirez the videos on her phone, but Detective Ramirez did not obtain a copy or recording of the videos from the employee. He did not contact Appellant about the Snapchat video or otherwise attempt to secure the video that day.

Instead, Detective Ramirez called Appellant three days later and asked him to provide a formal statement. Appellant agreed to meet with Detective Ramirez, and Detective Ramirez drove Appellant to the

Stafford Police Department. Once there, Detective Ramirez asked Appellant to show him the videos from Snapchat. Appellant explained that Snapchat automatically deleted the videos after 24 hours and told Detective Ramirez that he did not have any other videos relevant to the investigation.

Detective Ramirez told Appellant that he only had two options: either (1) give consent to search the phone, in which case Appellant would have the phone back quickly, or (2) Detective Ramirez would have to seize the phone and obtain a search warrant, which would take much longer. Appellant responded that Detective Ramirez should get a search warrant, at which point Detective Ramirez seized Appellant's phone. Detective Ramirez again asked Appellant for consent to search Appellant's phone and told him that he had never had a search warrant denied in his decade of experience as a police officer. Appellant again declined to give Detective Ramirez consent to search the phone. Detective Ramirez then seized Appellant's phone but did not search its contents.

Two days after the warrantless seizure of the phone, Detective Ramirez applied for a search warrant. The affidavit recited that Appellant told Detective Ramirez that Snapchat deleted any videos after 24 hours and that he did not have any videos that could help the

investigation, which Detective Ramirez "refused to believe." The affidavit also recited that Detective Ramirez, being a forensic cell phone examiner himself, knew that content deleted from phones could sometimes be recovered. Similarly, the affidavit also later stated that cell phones save and delete information on both the internal memory system and the SIM card, so even though an item may have been deleted, it could still be possible to recover the deleted files. Detective Ramirez recited in the affidavit that Appellant's motives for recording the initial investigation were unknown. Moreover, Detective Ramirez sought to discover whether Appellant might have "recorded the actual robbery as he has shown an inclination to record with his cell phone despite the propriety of the activity." Finally, Detective Ramirez also relied in the affidavit upon Appellant's refusal to consent to the search of the phone as support for the search warrant.

The warrant issued the same day as the application. The Warrant Return and Inventory indicated that the warrant was not executed, however, until two days later, which was four days after the phone had been seized. The search of the phone pursuant to the search warrant revealed text messages that incriminated Appellant. It is unclear whether the Snapchat video was obtained during the search.

Police arrested Appellant on January 10, 2016. The State indicted Appellant for aggravated robbery.[1] Appellant pleaded not guilty and elected to proceed with a jury trial.

### The Trial & Suppression Hearing

Appellant filed a pretrial motion to suppress. In his motion, Appellant argued that Detective Ramirez's warrantless seizure of his cell phone violated the Fourth Amendment and asked the trial court to suppress all evidence obtained from the phone. The trial court held a hearing on Appellant's motion to suppress after jury selection.

Detective Ramirez testified at the suppression hearing. His testimony largely echoed the information in his affidavit. When asked how urgent he felt it was to obtain Appellant's phone, Detective Ramirez responded, "The device, not very urgent at all. I needed a copy of the videos and any other evidence." He conceded that he did not obtain a copy of the video from the employee who showed it to him. When asked why, Detective Ramirez explained that the employee did not want to copy the video because she was concerned that doing so would notify Appellant. Detective Ramirez acknowledged that, although he felt

---

[1] *See* TEX. PENAL CODE § 29.03.

obtaining a copy of the videos was "pretty urgent at that time," he did not seize the employee's phone.

On redirect, Appellant's counsel asked what prevented Detective Ramirez from obtaining a search warrant for Appellant's phone earlier. Detective Ramirez responded, "[h]onestly, I was hoping with him being a witness, he would just consent and it wouldn't have been a big deal." He also acknowledged that, before seizing the phone, he did not view Appellant as a suspect. When asked whether he expected the Snapchat videos to be inculpatory or exculpatory, Detective Ramirez stated, "I mean, I just believed that they were -- they were videos that could have contained evidence to my investigation. I really didn't know what all was on there. I saw one short clip. I didn't know what else was there. I mean, I really -- I don't know how to answer that, to be honest with you." Detective Ramirez ultimately agreed that he could have obtained the warrant "a lot sooner" than he did.

The trial court denied Appellant's motion to suppress. The State offered—and the trial court admitted into evidence during the guilt/innocence phase of the trial—text messages obtained from the search of Appellant's phone. The State did not offer the Snapchat video into evidence, however. The jury found Appellant guilty of aggravated robbery and sentenced him to 17 years imprisonment.

## The Appeal

On appeal, Appellant's sole argument was that the trial court erred by denying his motion to suppress the evidence obtained following the warrantless seizure of his cell phone.[2]  The court of appeals agreed, concluding that Detective Ramirez's warrantless seizure of Appellant's phone did not fall within the exigent-circumstances exception.[3]  In reaching this conclusion, the court of appeals cited our opinion in *Turrubiate v. State* for the proposition that the exigent-circumstances exception to the warrant requirement requires "proof of imminent destruction based on affirmative conduct."[4] Though some facts suggested that potential evidence could have been deleted automatically by Snapchat, the court of appeals found that the record lacked "any evidence showing or permitting an inference that Appellant was taking affirmative steps to destroy evidence on his phone."[5] Finding that the erroneous admission of the evidence seized from Appellant's

---

[2] *Igboji v. State*, 607 S.W.3d 157, 160–61 (Tex. App.—Houston [14th Dist.] 2020).

[3] *Id.* at 170.

[4] *Id.* at 169 (citing *Turrubiate v. State*, 399 S.W.3d 147, 153–55 (Tex. Crim. App. 2013)).

[5] *Id.*

cell phone was not harmless, the court of appeals reversed and remanded for a new trial.[6]

In a dissenting opinion, Justice Christopher opined that the majority was wrong to apply the affirmative conduct requirement to a case involving the seizure of personal property.[7] She noted that *Turrubiate* dealt with the warrantless search of a house, which implicated a protected privacy interest beyond the possessory interest a person has in his or her personal property.[8] Instead, Justice Christopher opined the warrantless seizure of the cellphone was justified under the exigent-circumstances exception despite the lack of any affirmative conduct on the part of Appellant suggesting the imminent destruction of evidence.[9]

The State Prosecuting Attorney's Office filed a petition for discretionary review, asking this Court to review the court of appeals' decision. Specifically, we granted review to consider the following questions:

---

[6] *Id.* at 172.

[7] *Id.*

[8] *Id.* at 172–73.

[9] *Id.* at 174.

(1) Do exigent circumstances to seize a cellular phone for fear of unintentional loss of evidence require that law enforcement act at the earliest possible opportunity?

(2) Do exigent circumstances to seize a cellular phone for fear of intentional destruction of evidence require "affirmative conduct" by the suspect?

(3) Does the exigent circumstances exception require proof that the evidence was unavailable from other sources?

However, the court of appeals' decision rests on the proposition that the seizure at issue was unjustified because there was no evidence of "affirmative conduct" on the part of Appellant. To the extent that the court of appeals touched on the availability of the same information from other sources and the lack of alacrity with which Detective Ramirez sought the evidence, those were observations about the facts of the case and not part of the legal decision. Consequently, we dismiss issues one and three as improvidently granted and focus solely on the State's second issue. The question before us is whether the court of appeals failed to apply the proper standard for determining whether exigent circumstances existed by requiring a showing of affirmative conduct on the part of a suspect suggesting the destruction of evidence is imminent.

**Standard of Review**

We review a trial court's denial of a motion to suppress under a bifurcated standard of review.[10]  We review a trial court's determination of whether a specific search or seizure was reasonable under a *de novo* standard,[11] but we give trial courts almost complete deference in determining historical facts that depend on credibility and demeanor.[12] Because the trial court did not make explicit findings of fact in this case, we review the evidence in a light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported by the record.[13]  Generally, our review is limited to the record at the time of the suppression hearing.[14]

## The Fourth Amendment

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"[15] Generally, the Fourth Amendment requires that searches and seizures be accomplished

---

[10] *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005).

[11] *Kothe v. State*, 152 S.W.3d 54, 62–63 (Tex. Crim. App. 2004).

[12] *Ford*, 158 S.W.3d at 493.

[13] *Id.*

[14] *Turrubiate v. State*, 399 S.W.3d 147, 151–52 (Tex. Crim. App. 2013) (citing *O'Hara v. State*, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000)).

[15] U.S. CONST. amend. IV.

pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be searched or seized.[16] A warrantless search or seizure is *per se* unreasonable under the Fourth Amendment unless it falls within a recognized exception to the warrant requirement.[17]

One such exception is based upon the existence of exigent circumstances. The exigent-circumstances exception applies when "the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment."[18] The exception enables law enforcement officers to handle emergencies—situations presenting a "compelling need for official action and no time to secure a warrant."[19] Under this exception, law enforcement may be justified in conducting a warrantless search "to prevent the imminent destruction of evidence."[20] Whether law enforcement faced an emergency that justified acting without a

---

[16] *United States v. Place*, 462 U.S. 696, 701 (1983).

[17] *Missouri v. McNeely*, 569 U.S. 141, 148 (2013); *Place*, 462 U.S. at 701; *Kothe*, 152 S.W.3d at 59 n.10 ("warrantless searches and seizures are presumed to be unreasonable").

[18] *Kentucky v. King*, 563 U.S. 452, 460 (2011).

[19] *Riley v. California*, 573 U.S. 373, 402 (2014); *McNeely*, 569 U.S. at 149.

[20] *McNeely*, 569 U.S. at 149.

warrant calls for a case-by-case determination based on the totality of circumstances existing at the time of the search or seizure.[21]

Because a warrantless search or seizure is *per se* unreasonable under the Fourth Amendment, once a defendant has shown that a warrantless search or seizure has occurred, the burden shifts to the State to prove that an exception to the warrant requirement applies.[22] To validate a warrantless search based on exigent circumstances, the State must satisfy a two-step process.[23]    First, there must be probable cause to enter or search a specific location.[24]    In the context of warrantless searches, probable cause exists "when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality . . . or evidence of a crime will be found."[25]

Second, an exigency that requires an immediate action on the part of law enforcement must exist.[26]  We have identified three categories of

---

[21] *Cole v. State*, 490 S.W.3d 918 (Tex. Crim. App. 2016); *see also Lange v. California*, 141 S.Ct. 2011, 2018 (2021).

[22] *State v. Garcia*, 569 S.W.3d 142, 148 (Tex. Crim. App. 2018); *see also* 43 George E. Dix & John M. Schmolesky, Texas Practice—Criminal Practice and Procedure § 18:20 (3d ed. 2011).

[23] *Parker v. State*, 206 S.W.3d 593, 597 (Tex. Crim. App. 2006).

[24] *Id.*

[25] *Estrada v. State*, 154 S.W.3d 604, 609 (Tex. Crim. App. 2005).

[26] *Parker*, 206 S.W.3d at 597.

exigent circumstances that justify a warrantless intrusion by police officers: (1) providing aid or assistance to persons whom law enforcement reasonably believes are in need of assistance; (2) protecting police officers from persons whom they reasonably believe to be present, armed, and dangerous; and (3) preventing the destruction of evidence or contraband.[27] In this case, we are only concerned with the third circumstance.

## Analysis

As discussed above, a warrantless seizure of personal property is *per se* unreasonable.[28] This principle applies even though a Fourth Amendment challenge may ultimately focus on the subsequent search of a container rather than its initial seizure.[29] When law enforcement has probable cause to believe that a container holds contraband or evidence of a crime, but has not secured a warrant, law enforcement may seize the property, pending the issuance of the warrant to examine the contents, if the exigencies of the circumstances demand it or some

---

[27] *McNairy v. State*, 835 S.W.2d 101, 107 (Tex. Crim. App. 1991), *abrogated in part on other grounds by Turrubiate*, 399 S.W.3d at 153.

[28] *Place*, 462 U.S. at 701.

[29] *Id.* at 700-01.

other recognized exception to the warrant requirement is present.[30] Relying in part upon our holding in *Turrubiate v. State*, the court of appeals set out the legal standard, discussed above, for evaluating whether exigent circumstances existed to justify the warrantless seizure of Appellant's phone to avoid the imminent destruction of evidence.[31]

However, the court read too much into our holding in *Turrubiate v. State*. Relying on *Turrubiate*, the court of appeals required a showing of some affirmative conduct by Appellant indicating a danger of imminent destruction of the Snapchat videos.[32] Finding that the record did not "contain any evidence showing that Appellant, by his affirmative conduct, was actively deleting evidence on his phone[,]" the court of appeals concluded that the warrantless seizure did not fall within the exigent-circumstances exception.[33] However, we agree with the dissent below that, in the context of a warrantless search or seizure pursuant

---

[30] *Id*. at 701; *see also Riley*, 573 U.S. at 401-02 (2014) (noting that the exigent circumstances exception may apply to cell phones and citing *Kentucky v. King*, 563 U.S. at 469, which involved a search of a residence, for the application of that exception to cell phone searches).

[31] *Igboji*, 607 S.W.3d at 167-68 (examining *Turrubiate*, 399 S.W.3d at 151-52).

[32] *Igboji*, 607 S.W.3d at 169 (citing *Turrubiate*, 399 S.W.3d at 153–55).

[33] *Id.* at 170.

to exigent circumstances, there is no requirement that the record show affirmative conduct on the part of the suspect.[34]

In this case, the court of appeals, perhaps understandably, placed too much emphasis on our use of the phrase "affirmative conduct" in *Turrubiate*.  Our decision in *Turrubiate* relied upon the Supreme Court holding in *Kentucky v. King*.[35]  As we explained, the Supreme Court in *King* rejected a presumption that those in possession of narcotics would destroy evidence upon learning of a police presence.[36]  In saying that *Kentucky v. King* required "proof of imminent destruction based on affirmative conduct", our point in *Turrubiate* was that there was no presumption that evidence would be imminently destroyed simply because a suspect knew that law enforcement was nearby or had contacted the suspect.[37]  And based on *King*, we rejected the State's argument that law enforcement could infer that the destruction of evidence was imminent simply because the suspect knew that police

---

[34] *See id.* at 172–73 (Christopher, J., dissenting).

[35] *Turrubiate*, 399 S.W.3d at 152 (discussing the holding of *King*, 563 U.S. at 462-63).

[36] *Turrubiate*, 399 S.W.3d at 152 (citing *King*, 563 U.S. at 469-70).

[37] *See id.* at 153; *see also King*, 563 U.S. at 469-70 (noting that a suspect may simply decline to answer the door when police knock on it, but if a suspect attempts to destroy evidence that may change the calculus).

were present.[38]  We explained that such an approach "would abandon the requirement that the record affirmatively show facts that reasonably indicate exigent circumstances that a defendant was attempting to, or would attempt to, destroy evidence, a requirement vital to the Supreme Court's holding in *King*."[39]  And, as we reiterated later, "[w]e require some evidence of exigency beyond mere knowledge of police presence and an odor of illegal narcotics."[40]  But the critical thing the record must show is facts suggesting an imminent destruction of evidence,[41] not necessarily affirmative conduct on the part of the criminal suspect.

Put another way, affirmative conduct by a suspect suggesting that he or she will soon destroy evidence or is in the process of destroying evidence—such as furtive movements—is one way of showing that an exigency—the imminent destruction of evidence—exists.[42]  But affirmative conduct is not the only way that a record may affirmatively

---

[38]  *Id*. at 152.

[39] *Id.*

[40] *Id.* at 154.

[41] Precedent consistently affirms that the potential destruction of evidence must be "imminent." *See, e.g.*, *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006); *Riley*, 573 U.S. at 402; *Birchfield v. North Dakota*, 579 U.S. 438, 455 (2016); *Lange*, 141 S.Ct. at 2018; *Cole*, 490 S.W.3d at 923.

[42] *See, e.g.*, *Turrubiate*, 399 S.W.3d at 154.

show that evidence was in danger of being imminently destroyed.[43] Given the fact-bound nature of the inquiry,[44] we decline to hold that affirmative conduct by a suspect is always required to show that the destruction of evidence was imminent. To the extent that our language in our holding in *Turrubiate* requires otherwise, we explicitly disavow it as an unwarranted extension of *King*.

The court of appeals also appears to have announced a categorial rule when it rejected the dissent's argument that police may reasonably seize personal property in order to secure a warrant when a criminal suspect realizes that police are on his trail.[45]  According to the court of appeals, "Such a test would arm law enforcement with a weapon to defeat the Fourth Amendment as a matter of law, thereby rendering it effectively null with respect to protecting the People's property from unreasonable seizure."[46]  At first blush, relying upon the mere fact that a suspect knows police are "on his trail" to establish exigency would seem to authorize the type of impermissible presumption that a suspect

---

[43] *See, e.g.*, *McNeely*, 569 U.S. at 153 (referring to "circumstances in which the suspect has control over easily disposable evidence" as a "now or never" situation giving rise to an exigency) (citing *Georgia v. Randolph*, 547 U.S. 103, 116, n. 6 (2006)).

[44] *See, e.g.*, *Lange*, 141 S.Ct. at 2018.

[45] *Igboji*, 607 S.W.3d at 170.

[46] *Id*.

will attempt to destroy evidence merely because he possesses it and is aware of police presence.[47]   The Supreme Court appears to have rejected this approach in *King* and noted that a suspect could choose to stand on his constitutional rights rather than acquiesce to a request from law enforcement.[48]

However, *King* and *Turrubiate* both dealt with situations involving warrantless entry into a person's home in order to conduct a warrantless search rather than the warrantless seizure of personal property in order to secure a search warrant.  As noted in the dissent below, there are differences between searches and seizures.[49]   In *Segura v. United States*, the United States Supreme Court held that a warrantless seizure to maintain the status quo during the time necessary to secure a warrant can be a reasonable warrantless seizure even if a warrantless search

---

[47] *Turrubiate*, 399 S.W.3d at 152.

[48] *King*, 563 U.S. at 470 ("Occupants who choose not to stand on their constitutional rights but instead elect to attempt to destroy evidence have only themselves to blame for the warrantless exigent circumstances search that may ensue.").  At least arguably, it also raises the question of whether law enforcement created its own exigency through actual or threatened violation of the Fourth Amendment.  *See King*, 563 U.S. at 469 ("For these reasons, we conclude that the exigent circumstances rule applies when the police do not gain entry to premises by means of an actual or threatened violation of the Fourth Amendment.").  However, it is an open question, left unconsidered by the court of appeals, whether this limitation on the exigent-circumstances exception applies to seizures of personal property in addition to searches of a premises.

[49] *Igboji*, 607 S.W.3d at 172 (Christopher, J. dissenting).

would have been impermissible.[50]   And in *United States v. Place*, the Supreme Court recognized that law enforcement could essentially "detain" personal property based upon less than probable cause so long as the seizure was not unreasonably prolonged.[51]   Rather than announcing a categorical rule that police may never seize personal property simply because a criminal suspect knows he is a suspect, the court of appeals should have analyzed under the totality of the circumstances whether law enforcement's seizure of Appellant's phone was the type of reasonable seizure necessary to maintain the status quo to provide law enforcement with time to secure a search warrant.[52]

### Conclusion

For exigent circumstances to justify a warrantless seizure of personal property, such as a cell phone, the record must show that law enforcement officers reasonably believed that evidence would be imminently destroyed if they waited to obtain a warrant to seize the

---

[50] *Segura v. United States*, 468 U.S. 796, 806 (1984).

[51] *Place*, 462 U.S. at 708; *but see Florida v. Bostick*, 501 U.S. 429, 437 (1991) ("We have consistently held that a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure."); *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013) ("A person's refusal to cooperate with police during a consensual encounter cannot, by itself, provide the basis for a detention.").

[52] *See, e.g.*, *Segura*, 468 U.S. at 806; *Place*, 462 U.S. at 708 (recognizing that police may seize personal property on reasonable suspicion in order to obtain a warrant, but they may not unduly prolong the seizure).

property.  Affirmative conduct by the suspect is not required, but it is one way the record may show that the potential destruction was imminent.  We remand for the court of appeals to reconsider the arguments of the parties regarding whether exigent circumstances existed to justify the warrantless seizure of Appellant's cell phone in this case and whether the officer's conduct in seizing the property to obtain a warrant was reasonable under those circumstances.[53]

Delivered: March 8, 2023

Publish

---

[53] *See, e.g., McClintock v. State*, 444 S.W.3d 15, 20-21 (Tex. Crim. App. 2014) ("But the issue of the proper application of the exclusionary rule to the facts of this case is not remotely clear cut, and we believe that the proper disposition here should be to remand for the court of appeals to address it in the first instances.  The parties make a number of substantial arguments in support of their respective positions in this Court, and our resolution of this issue (if any should even be necessary after a remand) would benefit from a carefully wrought decision from the court of appeals.").